**UNITED STATES of America,
Appellee,**

v.

**William N. ANDERSON et al.,
Appellants.**

**No. 72–1069.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 8, 1973.

Decided June 26, 1973.

Philip A. Baer, Huntington, W. Va. (Baer & Napier, Robert H. Burford and Beckett, Burford & James, Huntington, W. Va., on brief) for appellants.

Robert B. King, Asst. U. S. Atty. (John A. Field, III, U. S. Atty., on brief) for appellee.

Before WINTER and RUSSELL, Circuit Judges, and MURRAY, District Judge.

DONALD RUSSELL, Circuit Judge:

The defendants were convicted by a jury of violating Section 241, 18 U.S.C., which makes it a crime for two or more persons to conspire to injure any citizen in the free exercise or enjoyment of his federal constitutional rights. The prosecution arose out of a primary election in Logan County, West Virginia. The offense involved the alleged "stuffing" of the ballot box with illegal ballots at one of the voting precincts during such election. The defendants have appealed. We find no error in the trial below and affirm.

## I.

▇ The defendants level their first attack against the indictment itself. According to their argument, the indictment consisted of "only legal conclusions", was "totally devoid of any allegation of fact constituting or describing the offense intending (sic) to be charged", and was defective for failure "to allege that the conspiracy related to votes for candidates for Congress and the United States Senate." Even a hasty reading of the indictment, however, demonstrates that this claim is, to use the defendants' own phrase, "totally devoid" of merit. The indictment explicitly alleged that the election was "held within the State of West Virginia for the purpose of nominating candidates for the offices of United States Senator, Representative to Congress, and various state and county public offices."[1a]

It identified the election precinct where the alleged conspirators proposed to accomplish their illegal acts (i. e., "the Mount Gay precinct") and described with as much particularity as the indictment in United States v. Saylor (1944) 322 U.S. 385, 64 S.Ct. 1101,

88 L.Ed. 1341, the wrongful acts intended to be accomplished by the conspirators in such precinct (i. e., "to cause fraudulent and fictitious votes to be cast in said precinct"). The indictment thus stated an offense under Section 241 with as much precision as was required. Fields v. United States (4th Cir. 1955) 228 F.2d 544, 545–546, cert. denied, 350. U.S. 982, 76 S.Ct. 468, 100 L.Ed. 850; United States v. Morado (5th Cir. 1972) 454 F.2d 167, 169.

## II.

▇ In addition to their motion to dismiss on the ground of defective indictment, the defendants filed successive motions for a bill of particulars, for a preliminary hearing, for access to the grand jury testimony, for copies of all statements of any of the defendants in the possession of the Government, and finally "for full disclosure as provided under the Omnibus Hearing Project",[1] including "all documents and exhibits expected to be used in the said trial", any records or statements in the Government's files that will "tend to exculpate, absolve or exonerate any one of the defendants," and "a list of anticipated witnesses expected to be used, together with a sentence summary of their testimony." They predicated their motion "for full disclosure" on the assertion "that the indictment is so vague and indefinite that it is impossible adequately to prepare a defense or properly advise their clients", a claim which represented substantially the basis for their motion to dismiss and a claim which we have already found without merit. The defendants made no claim of "particularized need" in their other motions. In opposing the motions, the Government stated that it had in its possession no written statements of the defendants and that it had no "exculpa-

---

1a. Cf., III(c) hereof, as to whether jurisdiction under Section 241 is confined to federal elections.

1. This motion was apparently drafted in line with Section 5.3 of the Standards Relating to Discovery and Procedure Before

Trial, American Bar Association Project on Standards for Criminal Justice, approved August, 1970. See, Oliver, Omnibus Pretrial Proceedings: A Review of the Experience of the United States District Court for the Western District of Missouri, 58 F.R.D. 270 (1973).

tory material" in its files.[2] All of the motions were denied by the District Court. We find no error in such denials, and discuss them *seriatim*.

(a) *Motion for a Bill of Particulars*

 A motion for a bill of particulars is addressed to the sound discretion of the trial court, and, absent a showing of abuse of discretion, the ruling of the trial court will not be disturbed on appeal. United States v. Dulin (4th Cir. 1969) 410 F.2d 363, 364; United States v. Baggett (5th Cir. 1972) 455 F.2d 476, 477; United States v. Cooper (10th Cir. 1972) 464 F.2d 648, 654; United States v. Gray (8th Cir. 1972) 464 F.2d 632, 635. Ordinarily, the function of a bill of particulars is not to provide "detailed disclosure of the government's evidence in advance of trial" but to supply "any essential detail which may have been omitted from the indictment." Dillen v. Wainwright (5th Cir. 1971) 449 F.2d 331, 332; United States v. Cansler (7th Cir. 1969) 419 F.2d 952, 954; Hemphill v. United States (8th Cir. 1968) 392 F. 2d 45, 49, cert. denied 393 U.S. 877, 89

2. The motion for discovery of exculpatory material rests, of course, on Brady v. Maryland (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 as further explicated in Moore v. Illinois (1972) 408 U.S. 786, 794–795, 92 S.Ct. 2562, 2568, 33 L. Ed.2d 706:

"The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense and (c) the materiality of the evidence."

Disclosure required under this rule exists, however, whether a motion be made or not. Barbee v. Warden, Maryland Penitentiary (4th Cir. 1964) 331 F.2d 842, 845–846. And the Government must act in good faith in discharging this duty; if in doubt, it should submit the material in question to the court itself for *in camera* review. For an interesting discussion of what may be deemed "exculpatory material" within the rule, *see*, Ingram v. Peyton (4th Cir. 1966) 367 F.2d 933, 936; Barbee v. Warden, *supra*, 331 F.2d 842; 44 F.R.D. 500–505. An assurance by the Government that it does not possess exculpatory evidence, absent a particularized showing of its existence and materiality by the defendant, will not support a reversal of a trial court's denial of an *in camera* inspection by the Court of the Government's file. United States v. Crisona (2nd Cir. 1969) 416 F.2d 107, 116; United States v. Gonzalez (5th Cir. 1972) 466 F.2d 1286, 1288; United States v. Isaacs (D.C.Ill.1972) 347 F.Supp. 743, 759; *cf.*, however, Nakell, Criminal Discovery for the Defense and the Prosecution—The Developing Constitutional Considerations, 50 N.C.L.R. 437, at 458. No

attempt at such a showing in this case was made, though the defendants did suggest that perhaps the witness Napier had given a single negative statement in his testimony before the grand jury that could be considered exculpatory. The trial court did not find the answer exculpatory, but, if the statement was, it was made available to the defendants at trial before Napier was cross-examined. This was timely under the circumstances of this case. The Supreme Court "has never pinpointed the time at which the disclosure [*under Brady*] must be made." Nakell, *supra* (50 N.C.L. Rev. 437, 452). Disclosure should, however, be made "at a time when the disclosure would be of value to the accused" and "at least, before the taking of the accused's evidence is complete." Hamric v. Bailey (4th Cir. 1967) 386 F.2d 390, 393. *See, also,* United States v. Elmore (4th Cir. 1970) 423 F.2d 775, 779. As suggested in *Hamric*, it may well be that in a more complicated situation, where there is exculpatory evidence having "a material bearing on defense preparation", the Government should provide the defense with the exculpatory material prior to trial, otherwise the defense would not be able to "capitalize" on it. *Cf.*, United States v. Ahmad (D.C.Pa. 1971) 53 F.R.D. 186, 193–194; United States v. Cobb (D.C. N.Y. 1967) 271 F.Supp. 159, 163, aff'd., 2d Cir., 396 F.2d 158; United States v. Gleason (D.C.N.Y. 1967) 265 F.Supp. 880, 884–885. In this case, though, the so-called exculpatory evidence consisted of a single categorical answer. The defense could not have been prejudiced by not being afforded such bare answer prior to trial. *Cf.*, United States v. Elmore, *supra*, 423 F.2d 775.

For a general discussion of *Brady*, *see*, Note, Brady v. Maryland and the Prosecutor's Duty to Disclose, 40 U.Chi.L.Rev. 112 (1972).

S.Ct. 176, 21 L.Ed.2d 149. The information sought by the defendants in their motion was the entire range of evidence on which the Government relied, including the names of all witnesses to be used by the Government. Denial of such a disclosure, "whether requested by motion for Bill of Particulars under Rule 7(f), or by a motion for discovery under Rule 16(b), Federal Rules of Criminal Procedure", will not be considered an abuse of discretion on appeal. United States v. Baggett, *supra* (455 F.2d at 477). Particularly is this true where the Government, while resisting the broad scope of the motion, expresses, as it did in this case, its willingness "to provide the defendants with more details" should the defendants "frame their inquiries in such form that they may be answered without calling upon the Government to divulge its entire case." The defendants made no effort to take advantage of this offer of the Government. These circumstances in particular preclude a successful contention by the defendants that the trial court abused its discretion.

(b) *Demand for a Preliminary Hearing*

▮▮▮▮ Nor can a defendant demand a preliminary hearing after indictment, which was the posture of the prosecution when the defendants moved for a preliminary hearing. Section 3060(e), 18 U.S.C.; United States v. Mackey (4th Cir. 1973) 474 F.2d 55, 57; United States v. Farries (3d Cir. 1972) 459 F. 2d 1057, 1061, cert. denied 409 U.S. 888, 93 S.Ct. 143, 34 L.Ed.2d 145; United States v. Coley (5th Cir. 1971) 441 F.2d 1299, 1301; United States v. Chase (4th Cir. 1967) 372 F.2d 453, 467, cert. denied 387 U.S. 907, 87 S.Ct. 1688, 18 L. Ed.2d 626; Braxton v. Peyton (4th Cir. 1966) 365 F.2d 563, 565, cert. denied 385 U.S. 939, 87 S.Ct. 306, 17 L.Ed.2d 218.[3] The purpose of a preliminary hearing is not to provide a discovery mechanism for the defendant, though this may be a collateral or incidental benefit from the hearing, but merely to determine "whether probable cause exists to bind an accused for action by a grand jury." United States v. Chase, *supra,* 372 F.2d at 467; United States v. Mackey, *supra,* 474 F.2d at 57; United States v. Brumley (10th Cir. 1972) 466 F.2d 911, 915; *cf.,* Ross v. Sirica (1967) 127 U.S.App. D.C. 10, 380 F.2d 557.[4] After indictment, a preliminary hearing "would be an empty ritual". Barber v. United States (4th Cir. 1944) 142 F.2d 805, 807, cert. denied 322 U.S. 741, 64 S.Ct. 1054, 88 L.Ed. 1574; Sciortino v. Zam-

---

3. *See, also,* Jaben v. United States (1965) 381 U.S. 214, 220, 85 S.Ct. 1365, 1369, 14 L.Ed.2d 345, reh. den. 382 U.S. 873, 86 S.Ct. 19, 15 L.Ed.2d 114, where the Court said that, under Rule 5, Federal Rules of Criminal Procedure, a preliminary hearing was required, *"unless before the preliminary . hearing is held, the grand jury supersedes the complaint procedure by returning an indictment."* (Italics added.)

4. For a discussion of *Ross, see,* United States v. Milano (10th Cir. 1971) 443 F. 2d 1022, 1025, cert. denied 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 258:
 "Defendant relies on Blue v. United States, 119 U.S.App.D.C. 315, 342 F.2d 894 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965), and Ross v. Sirica, 127 U.S.App.D.C. 10, 380 F.2d 557 (1967), which did say that the preliminary examination also provided the defendant with discovery.

But that is merely an incidental benefit—which varies widely from case to case, depending on how much evidence the government produces at this early state—and not the statutory purpose. *Blue* and *Ross* have not been followed in other circuits. *Cf.* United States v. Karger, 439 F.2d 1108 (1st Cir. 1971). Moreover, 18 U.S.C. § 3060 was enacted after both cases, and, we think, clarifies the statutory purpose."
This language is reiterated in United States v. Brumley, *supra* (466 F.2d at 915–916).
 It has been suggested that if the preliminary hearing is expanded into a discovery proceeding, there is danger of a "trial before a trial," a procedure that would bog down the expedient administration of criminal courts. Note, Toward Effective Criminal Discovery: A Proposed Revision of Federal Rule 16, 15 Vill.L. Rev. 655 at 678 (1970).

pano (2nd Cir. 1967) 385 F.2d 132, 133, cert. denied 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 872; United States v. Daras (9th Cir. 1972) 462 F.2d 1361, 1362, cert. denied 409 U.S. 1046, 93 S.Ct. 545, 34 L.Ed.2d 497; Crump v. Anderson (1965) 122 U.S.App.D.C. 173, 352 F.2d 649, 655–656; Dillard v. Bomar (6th Cir. 1965) 342 F.2d 789, 790, cert. denied 382 U.S. 883, 86 S.Ct. 176, 15 L. Ed.2d 123; Vincent v. United States (8th Cir. 1964) 337 F.2d 891, 896, cert. denied 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281, reh. denied 381 U.S. 947, 85 S.Ct. 1775, 14 L.Ed.2d 713.[5]

(c) *Discovery of Grand Jury Testimony*

▇▇▇▇ Except for his own testimony, a defendant is not entitled of right to pre-trial access to the testimony before the grand jury: The obligation of the Government is merely to make available to the defendant the testimony of a witness before the grand jury at the conclusion of the direct testimony of such witness at trial and then only if the defendant shows a "particularized need" for such disclosure.[6] This was our holding in United States v. Johnson (4th Cir. 1969) 419 F.2d 56, 59, cert. denied 397 U.S. 1010, 90 S.Ct. 1235, 25 L. Ed.2d 423.[7] Even where a defendant alleges a "particularized need" (which the defendants have not done in this case), the denial of access at trial will be disturbed on appeal only if the finding by the trial court against the claim of "particularized need" was clearly erroneous. United States v. Bryant (4th Cir. 1966) 364 F.2d 598, 600; Posey v. United States (5th Cir. 1969) 416 F.2d 545, 557, cert. denied 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127, reh. denied 397 U. S. 1031, 90 S.Ct. 1267, 25 L.Ed.2d 544. This ruling conforms with the Jencks Act, as amended in 1970, Section 3500(e)(3), 18 U.S.C.[8] and is in line with the majority rule as established in the several circuits. United States v.

---

5. *Cf.*, however, Nakell, Note, *supra*, at 468.
 "* * * Coleman [Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L. Ed.2d 387] could be interpreted to provide a constitutional right to a preliminary hearing * * *."
 *But, cf.* concurring opinion of Justice White in *Coleman* (399 U.S. at 17–18, 90 S.Ct. 1999).

6. For a discussion of what may constitute "particularized need", *see*, Note, Defense Access to Grand Jury Testimony: A Right in Search of a Standard, 1968 Duke L.J. 556.

7. In *Johnson*, the Court said (419 F.2d at 59):
 "Johnson argues that recent decisions allow automatic access to grand jury testimony and that no longer must a defendant make a showing of particularized need for examining the grand jury's minutes. None of these decisions, however, require disclosure of all grand jury testimony as a matter of right. The Second and Seventh Circuits afford the broadest disclosure for the purposes of impeachment. There, in the absence of sound reasons for a protective order, a defendant may examine the grand jury testimony of a witness on subjects about which the witness testified at the trial."

 It would seem, however, the Seventh Circuit has now adopted the view expressed in *Johnson*. See, United States v. Cerone (7th Cir. 1971) 452 F.2d 274, 287:
 "* * * Grand jury minutes are not available as of course to defendants in federal criminal trials, but rather may be made available in the exercise of the trial court's discretion when the defense has shown that 'a particularized need' exists for the minutes which outweighs the policy of secrecy [of the grand jury's proceedings]."

8. See 1 Wright, Federal Practice and Procedure (1972 Supplement), § 254, at 130, n. 91:
 "As a part of the Organized Crime Control Act of 1970, the Jencks Act was amended to include in the definition of 'statement' in 18 U.S.C.A. § 3500(c) [§ 3500(e)] the following new provision: '(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.'"
 *See, also,* U.S.Code Cong. & Admn. News, 91st Cong. 2d Sess., 1970, at 4017, Pub.L. 91–452, 84 Stat. 926; *but, cf.,* United States v. Duffy (D.C.Ill. 1972) 54 F.R.D. 549, 550.

Daras (9th Cir. 1972) 462 F.2d 1361, 1362, cert. denied 409 U.S. 1046, 93 S.Ct. 545, 34 L.Ed.2d 497; United States v. Quintana (10th Cir. 1972) 457 F.2d 874, 878, cert. denied 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130; United States v. Doe (1st Cir. 1972) 455 F.2d 1270, 1274; United States v. Harflinger (8th Cir. 1970) 436 F.2d 928, 935, cert. denied 402 U.S. 973, 91 S.Ct. 1660, 29 L. Ed.2d 137; United States v. Bass (8th Cir. 1973) 472 F.2d 207, 210; see, also, Proposed Amended Rule 16 (VI)(3), Federal Rules of Criminal Procedure, 48 F.R.D., at 590.

(d) *Motion for Full Disclosure as Part of Omnibus Pre-trial Proceedings*

■■■■ Finally, the defendants sought by their "motion for full disclosure" under Rule 16(b) to compel the pre-trial production by the Government of all documents to be introduced and a list of all witnesses to be used, along with a summary of their testimony.[9] While, since the 1966 amendment, courts have been more liberal in their grant of relief under Rule 16(b), the granting of relief under that Rule remains "a matter within the sound discretion of the district court" and the action of the district court, in denying such relief, "is reviewable only for an abuse of discretion." United States v. Cole (8th Cir. 1972) 453 F.2d 902, 904; United States v. Pope (7th Cir. 1969) 409 F.2d 371, 374. As a matter of fact, the Government asserted that all documents to be introduced by it were included in the record of the election contest, which it tendered to the defendants. As for the de-

mand of the defendants for a list of the Government's witnesses, they were not entitled of right, in this non-capital case, to such pretrial disclosure. United States v. Chase, *supra* (372 F.2d at 466); United States v. Elmore, *supra* (423 F. 2d at 779, n. 7); United States v. Harflinger, *supra* (436 F.2d at 936); United States v. Wolfson (2nd Cir. 1969) 413 F.2d 804, 808; United States v. White (5th Cir. 1971) 450 F.2d 264, 268, n. 6. The trial court, of course, "in its discretion may order the government to produce such a list under Rule 16, Federal Rules of Criminal Procedure." United States v. Jordan (4th Cir. 1972) 466 F. 2d 99, 101.[10] In this case, it is quite obvious why the court may well have considered inappropriate any such discretionary pre-trial order requiring the government to provide defendants with a list of its witnesses in this case. The persons involved were all powerfully-placed public officials in a small county in which all the witnesses lived. There were suggestions that already persons conversant with the facts in the case had been harassed.[11] Moreover, there had been an earlier hearing in the county court. The persons who had knowledge of the facts were well known to the defendants and in the main had testified at this election hearing. In the light of all these circumstances, it cannot be said that the trial court abused its discretion in denying to the defendants a pre-trial list of the Government's witnesses.

■■■ Nor were the defendants entitled to a summary of the testimony to be given by such witnesses. The Court in Sendejas v. United States (9th Cir. 1970) 428 F.2d 1040, 1046, cert. denied

9. Pre-trial hearings in criminal cases have in recent years been encouraged and a number of District Courts have developed procedures for such hearings. *See,* Oliver, Omnibus Pretrial Proceedings, *supra* (58 F.R.D. 270) and Advisory Committee Note, Proposed Amended Rule 16, 48 F.R.D. 604.

10. *See, also,* Will v. United States (1967) 389 U.S. 90, 99, 88 S.Ct. 269, 19 L.Ed.2d 305; United States v. Houston (D.C.Ga. 1972) 339 F.Supp. 762, 765; Proposed

Amendments to Criminal Rules, 48 F.R. D. 553, 603–604; Note, Discovery of Witness Identity under Preliminary Proposed Federal Criminal Rule 16, 12 W. & M.L. Rev. 603 (1971); and Orfield, List of Witnesses and Jurors in Federal Criminal Cases, 44 F.R.D. 527.

11. *See* the comments of the United States Attorney for Connecticut on this possibility of harassment as a reason for denial of a list of government witnesses in 44 F.R.D. at 499 (1968).

400 U.S. 879, 91 S.Ct. 127, 27 L.Ed.2d 116, correctly stated the controlling rule in this connection thus:

"There is nothing as plain as the statute [i. e., the Jencks Act] in terms of stating that no pretrial statement in the possession of the government shall be subject to subpoena, discovery or inspection until the individual witness *has testified on direct* examination in the *trial of the case* and then only after proper motion by the defendant." (Italics in the opinion.)

Actually, the trial court construed the motion of the defendants as intended to "require that the Government disclose to the defendants the details, witnesses and minutiae of the Government's case against the defendants." Taken as a whole, the motions of the defendants were what might be described as "a shotgun fishing expedition for evidence," United States v. Crisona (D.C. N.Y.1967) 271 F.Supp. 150, 158 and as "overly broad in scope", United States v. Wolfson, *supra*, 413 F.2d at 808. Rule 16 does not require "the prosecution to disclose all the minutia [sic] of its evidence, to reveal its trial strategy, and to delineate with total specificity the case it intends to present." United States v. Fioravanti (3d Cir. 1969) 412 F.2d 407, 411, cert. denied 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88. Under the circumstances of this case, we find no error in the denial of such a motion.

### III.

The defendants next contend that the District Court erred in the admission of the sworn testimony of the defendants Earl Tomblin and John R. Browning, taken at the state hearing on the protest filed by the defeated candidate for County Judge and involving the Mount Gay ballot box. There is, however, considerable ambivalence and vacillation of position on the part of the defendants with reference to this claim of inadmissibility. When the evidence was first proffered, the defendants apparently contended that no statement by a defendant was admissible in the prosecution's case in chief because, "(T)his is a manner of in effect placing him on the witness stand by reading his testimony", violative of the defendant's constitutional "right to stand mute". Later, in the same colloquy, the defendants suggested that, since the testimony was given "in a judicial hearing", there might be *Miranda* problems. Subsequently, the defendants moved to strike the testimony, as against any defendants other than the one whose prior testimony was being proffered as evidence. It would seem that, for purposes of this motion to strike at least, the defendants were then conceding that the evidence was admissible against the defendant whose testimony at the election contest hearing was proffered but against no other defendants. On reaching this Court, however, the defendants began a new line of attack on this testimony, entirely different from any advanced in the trial below. In their brief in this Court, they argue that the testimony of Tomblin and Browning at the election contest hearing was offered for purposes of impeaching the credibility of those two defendants and that, since those defendants had exercised their constitutional right not to testify, the admission of such evidence violated their Fifth Amendment rights. Finally, during oral argument in this Court, the question arose whether the conspiracy forming the basis of the prosecution, so far as federal jurisdiction over the conduct of the defendants is concerned, ended with the certification of the nomination of the candidates for federal office, thereby making inadmissible against all other defendants any statements made by Tomblin or Browning at the subsequent election contest hearing.

■ Ordinarily, we would not consider grounds of objection not presented in the trial court.[12] This, it would seem,

---

12. Nelms v. Laird (4th Cir. 1971) 442 F.2d 1163, 1169, rev'd on other grounds 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); McGowan v. Gillenwater (4th

would be a particularly appropriate action in this case, where the defendants have shifted so often in their contentions. However, the rule is not applied inflexibly. Where injustice may result the Court may consider other grounds than those pressed on the trial court.[13] Exercising that discretion, we shall consider all the grounds of objection raised by the defendants.

(a) *Alleged Inadmissibility as Evidence Intended Solely for Impeachment*

■■■ As we have stated, it is the position of the defendants, raised by their brief in this Court but not before the trial court, that the sole purpose of the Government in introducing the testimony given by Tomblin and Browning at the earlier election contest was to impeach the credibility of those defendants and that the introduction of such testimony effectively and unfairly impeached the credibility of *all* the defendants. Testimony at an earlier trial, they argue, is admissible for impeachment purposes only if the defendant whose earlier testimony is to be used has testified. In support of this theory of inadmissibility, the defendants cite in their brief two Texas cases. Neither sustains their position. If anything, they uphold the admissibility of the testimony. In the first of these cases, Scherpig v. State (1929) 112 Tex.Cr.R. 61, 13 S.W. 2d 872, a portion of the testimony of the defendant in another trial was offered in evidence by the prosecution and admitted. Thereafter, the defendant, who did not testify, offered other parts of the testimony of the defendant. In rebuttal, the prosecution offered the complete testimony of the defendant at the earlier trial but only "for the purposes of impeaching the defendant's credibility", and the Court specifically instructed the jury that it could consider that statement solely for purposes of impeachment. The defendant excepted, contending that the statement, as admitted in evidence, could not be so limited but was "before the jury for all purposes". The Court sustained this contention of the defendant, adding (13 S. W.2d at 873):

"Beyond question what appellant had sworn to on a former trial of this case, if material to any issue before the court upon this trial, would be admissible testimony when offered by the state; * * *."

It is manifest that, far from sustaining the defendants' position, this case provides no support for the contention of the defendants.

Equally inapposite is the other authority cited by the defendants, Taylor v. State (1917) 82 Tex.Cr.R. 210, 199 S. W. 289. There, the prosecution proffered testimony dealing with other crimes committed by the defendant, entirely unrelated to the offense for which he was then being tried. Such testimony was offered merely for purposes of impeaching the credibility of the defendant and not for purpose of establishing any circumstance or fact relevant to the pending prosecution. The defendant did not testify. The Court properly held that testimony relating to the commission of other crimes by the defendant, some of which did not even involve moral turpitude, and none of which had any factual relationship to the offense then before the Court, was inadmissible simply for impeachment purposes where the defendant did not testify; but, lest its limited ruling be misunderstood, the Court added this concluding sentence (199 S.W. at 290):

"Of course, any incriminating testimony given by him in the other case could be proved on trial of this case and as such would be admissible."

This authority, again, when examined on its special facts, supports the admissibil-

---

Cir. 1970) 429 F.2d 586, 587; McKissick v. United States (5th Cir. 1967) 379 F.2d 754, 759.

13. Wratchford v. S. J. Groves & Sons Company (4th Cir. 1969) 405 F.2d 1061, 1063; In re Elmore (1967), 127 U.S.App. D.C. 176, 382 F.2d 125, 127.

ity of the testimony of Tomblin and Browning in the election contest.

The real difficulty with this argument of the defendants is that the testimony objected to was not proffered "for the purpose of impeaching" the two defendants by testimony having no relevance to the facts of the instant prosecution but as an admission by those defendants of facts directly related to the instant prosecution. The Government offered testimony from one Garrett Sullins that the latter was not present at the Mount Gay precinct on election day and had not voted at that precinct. Tomblin, however, had testified at the election contest hearing that he saw Garrett Sullins at the Mount Gay precinct and had observed him as he went in to vote. That testimony was given by Tomblin and the other conspirators in order to establish the alleged legality of the challenged vote of Garrett Sullins and, thus, through a finding of the legality of such vote and others like it, to secure the dismissal of the election contest. The establishment of the validity of this and other like votes was a necessary and integral part of the conspiratorial purpose, which was to secure the Democratic nomination of Okey Hager for County Judge through "stuffing" the ballot box with false votes. The record of Tomblin's prior testimony was thus not offered to impeach the credibility of Tomblin or Browning by proof of some other unrelated criminal record of Tomblin or Browning. It was offered as proof of acts done in furtherance of the very conspiracy charged. As such it was manifestly admissible. Contrary to the argument of counsel for the defendants at trial, testimony of a defendant, given at another trial or hearing, is admissible, and this is true whether the defendant elects to testify in his own defense or not, Orth v. United States (4th Cir. 1918) 252 F. 569, 570; Edmonds v. United States (1959) 106 U.S.App.D.C.

373, 273 F.2d 108, 112–113, cert. denied 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012; London v. Patterson (9th Cir. 1972) 463 F.2d 95, 97; Hale v. United States (10th Cir. 1969) 406 F.2d 476, 478–479, cert. denied 395 U.S. 977, 89 S.Ct. 2129, 23 L.Ed.2d 765 and whether he appeared as a defendant or witness, Boitano v. United States (9th Cir. 1925) 7 F.2d 324, 325, United States v. Cecil (8th Cir. 1972) 457 F.2d 1178, 1181. It is of no moment whether the former trial was for the same offense or for some other, Milton v. United States (1940) 71 U.S.App.D.C. 394, 110 F.2d 556, 559–560, or whether the trial was a criminal or civil proceeding, Ayres v. United States (5th Cir. 1952) 193 F.2d 739, 740–741.

(b) *Alleged Improper Admission of such Testimony against Co-conspirators of the Declarant*

It will be noted from the record that, when first confronted with this testimony, the defendants contested admissibility on the grounds (1) that such evidence violated the Fifth Amendment rights of the persons whose prior testimony was being used and (2) that its admission against those persons would be in contravention of the rule in *Miranda*. The first ground has already been disposed of under the principles enunciated in Orth v. United States, *supra* (252 F. 569). The implication that the rule announced in Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, might inhibit the introduction of this testimony is wide of the mark. *Miranda* applies to statements procured during "custodial police interrogation" and has no application to voluntary testimony such as that involved here, given in another judicial hearing.[14] As for the contention advanced in their subsequent motion to strike, that this testimony was inadmissible against any defendant other than the particular defendant who had testified,[15] the District

---

14. *See*, Schneckloth v. Bustamonte, 412 U.S. 218, 240, note 29, 93 S.Ct. 2041, 2055, 36 L.Ed.2d 854, 1973.

15. *See*, Appendix, p. 855:
 "MR. GREENE: This is all right.
 "Now comes the defendant John R. Browning and moves the Court to strike

Court apparently covered the objection in its instructions which clarified the circumstances under which the testimony could be considered by the jury against all defendants, rather than just against those making the statements—at least, the defendants did not except to the portion of the charge in which the District Court set forth the circumstances under which this testimony could be considered as against defendants other than the ones whose prior testimony in another proceeding had been admitted.[16]

At the conclusion of the District Court's charge, however, the defendants entered an exception that indirectly put in issue the admissibility of this previous testimony of Tomblin and Browning as against the other defendants. They excepted to the District Court's failure to charge that the conspiracy ended with the certification of the election results on May 27, 1970. While the request to charge made no reference to the election contest, such an instruction, if given, would have required a revision of the District Court's earlier ruling that, if the jury found that the conspiracy continued after the election result certification and through the election contest hearing, then the testimony given by Tomblin and Browning at the election hearing was admissible against all participants in the conspiracy. Thus, by this request to charge, the defendants posed an issue that went directly to the admissibility of the challenged evidence —not as against Tomblin or Browning but as against the other defendants.

We are of opinion the District Court properly refused such request to charge and properly left standing his instructions with reference to the circumstances under which this testimony could be considered by them in determining on the guilt or innocence of the defendants other than Tomblin and Browning. The flaw in the contention of the defendants lies in the difference between means and ends. An unlawful conspiracy is presumed to continue until its objective or purpose is achieved. United States v. Wechsler (4th Cir. 1968) 392 F.2d 344, 347–348, cert. denied 392 U.S. 932, 88 S.Ct. 2283, 20 L. Ed.2d 1389, reh. denied 393 U.S. 902, 89 S.Ct. 71, 21 L.Ed.2d 191; United States v. Corallo (2nd Cir. 1969) 413 F.2d 1306, 1319–1320, cert. denied 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 422; United States v. Carvelli (D.C.N.Y.1972) 340 F.Supp. 1295, 1304, aff'd. (2nd Cir.) 464 F.2d 1129, cert. denied 409 U.S. 1076, 93 S.Ct. 684, 34 L.Ed.2d 664. The true object and purpose of this alleged conspiracy was to secure the Democratic nomination of Okey Hager as County Judge. As a means of accomplishing this purpose, the Mount Gay ballot box was to be filled with a sufficient number of fraudulent ballots to ensure Hager's nomination. But until those fraudulent ballots were finally given effect in the election result, the end sought by the conspiracy would be unrealized and Hag-

the evidence or the testimony of Earl Tomblin taken before the County Court and ask the jury not to consider it as any evidence as to John R. Browning.

"Your Honor, we do not have the right and opportunity to cross-examine and for many reasons it is obvious that this should be stricken from the jury as far as John R. Browning is concerned.

"MR. BAER : I would like the record to show the same motion as to all defendants except the defendant Earl Tomblin."

16. Note, immediately after admitting this testimony of Tomblin into evidence, the District Court instructed the jury as follows :

"Primarily that evidence could be considered by you only as bearing upon the guilt or innocence of Mr. Tomblin and you should view it in that perspective in the first instance. If, however, you should determine that at the time Mr. Tomblin gave this testimony in Logan County any conspiracy existed between him and any one or more of the other defendants and that you should conclude that this had any bearing on the furtherance of a conspiracy, you could then consider it as bearing upon the guilt or innocence of the other party or parties."

He restated the same instructions at the conclusion of the evidence.

er's nomination insecure. Accordingly, the alleged conspiracy did not end with the certification of the result by the managers but continued through the election contest, which was to resolve whether the votes in the questioned precinct were to be given final effect in the contest for the Democratic nomination for County Judge. This seems to have been recognized by the defendants. During the trial itself, they made, for instance, no contention that the conspiracy ended with the certification of the election returns by the box managers or that any statement given or act done by any one of the conspirators subsequent to the certification was admissible solely against the defendant making such statement or taking such action. Thus, Napier, one of the box managers, testified in great detail that certain of the defendants gathered a number of those involved in the fraudulent action at the election just before the election contest hearing and "[b]riefed us what we should say about Garrett Sullins [who had given an affidavit that he had not voted at the election, though he was recorded as having voted] and all of us sticking together and telling the same story, and when we are asked a question if we are going to answer it or not, look at Mr. Hager of the County Court." *This testimony was received against all the defendants without any objection by any defendant.* Nor in our judgment would any objection have been appropriate. Plainly, the conspiracy did not end with the certification and statements by any one of the conspirators up to and through the election hearing were admissible against all the defendants.

### (c) *Inadmissibility of Evidence Based on Scope of Section 241*

During argument before this Court, the question arose for the first time whether, since the only election result challenged by the protest related to a state office, federal jurisdiction terminated when the results of the federal election were finally certified, i. e., on May 27, 1970. It is suggested that federal jurisdiction over elections under Section 241 is limited to elections in which federal offices are at stake; and, when such federal elections are finally certified, any further federal criminal jurisdiction under that statute is at an end, whatever may be the situation with reference to any state contests arising out of the election. The gravamen of this argument, then, is that since there was no contest over the votes for federal offices at the Mount Gay box after the certification of May 27, 1971 federal jurisdiction over the conspiracy ended at that time, and evidence of subsequent events at a contest hearing involving only a state office voted on at the same election, was accordingly inadmissible. As we have stated, this involved argument arose only before this Court and was not presented to the District Court. The Government has argued that, whether the conspiracy had ended or not, the evidence was admissible under the principles enunciated in Lutwak v. United States (1953) 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593, reh. denied 345 U.S. 919, 73 S.Ct. 726, 97 L.Ed. 1352. Moreover there necessarily arises the question whether, when the defendants have attempted to use by way of cross-examination the testimony given by certain of the Government witnesses in the election contest for purposes of contradicting the testimony of those witnesses at trial, they are in any position to object to the use by the Government of testimony by certain of the defendants themselves at that election contest. We shall, however, not tarry over these points but choose to meet directly the contention that federal jurisdiction over the alleged conspiracy ended with the certification in the federal election contests and anything happening after that certification is inadmissible in a prosecution under Section 241.

■■■ The statute under which the defendants were tried is not a narrow statute. To quote the language of the Court in United States v. Classic (1941) 313 U.S. 299, 322, 61 S.Ct. 1031, 1041, 85 L.Ed. 1368, it "speaks neither of elections nor of primaries. In unambiguous language it protects 'any right or privi-

lege secured * * * by the Constitution * * * '." *See, also,* Screws v. United States (1945) 325 U.S. 91, 122 n. 17, 65 S.Ct. 1031, 89 L.Ed. 1495 (Rutledge, J. concurring). The inclusive nature of the statute was emphasized in the recent case of United States v. Guest (1966) 383 U.S. 745, 753, 86 S.Ct. 1170, 1175, 16 L.Ed.2d 239, where the Court said that "[w]e have made clear in *Price* [United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267] that when § 241 speaks of 'any right or privilege secured . . . by the Constitution or laws of the United States,' it means precisely that." Nor is the sweep of the statute confined to rights expressly defined in the Constitution; included among the rights "secured" thereby are those judicially determined to be fundamental and embraced by implication within the Equal Protection Clause of the Fourteenth Amendment. United States v. Guest, *supra,* at 755–756 of 383 U.S., 86 S.Ct. 1170. Right of suffrage "is a civil right of the highest order," Oregon v. Mitchell (1970) 400 U.S. 112, 139, 91 S.Ct. 260, 272, 27 L.Ed.2d 272 (Douglas, J. dissenting *and* concurring), and "a fundamental political right, because preservative of all rights", Yick Wo v. Hopkins (1886), 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220. No right is more precious than the right of suffrage. It involves "matters close to the core of our constitutional system", Carrington v. Rash (1965) 380 U.S. 89, 96, 85 S.Ct. 775, 780, 13 L.Ed.2d 675 for "(f)ree and honest elections are the very foundation of our republican form of government," MacDougall v. Green (1948) 335 U.S. 281, 288, 69 S.Ct. 1, 4, 93 L.Ed. 3 (Douglas, J., dissenting). Truly, "(o)ther rights, even the most basic are illusory if the right to vote is undermined", Wesberry v. Sanders (1964) 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481. Because of these compelling considerations, the right of suffrage, whether in an election for state or federal office, is one that qualifies under the Equal Protection Clause of the Fourteenth Amendment for protection from impairment, "when such impairment resulted from dilution by a false tally, *cf.,* United States v. Classic, 313 U.S. 299 [61 S.Ct. 1031] 85 L.Ed. 1368; or by a refusal to count votes from arbitrarily selected precincts, *cf.,* United States v. Mosley, 238 U.S. 383 [35 S.Ct. 904] 59 L.Ed. 1355, or by a stuffing of the ballot box, *cf.,* Ex Parte Siebold, 100 U.S. 371, 25 L.Ed. 717; United States v. Saylor, 322 U.S. 385 [64 S.Ct. 1101] 88 L.Ed. 1341." Baker v. Carr (1962) 369 U.S. 186, 208 and 247–248, 82 S.Ct. 691, 705 and 726, 7 L. Ed.2d 663.[17] This was bluntly stated in Reynolds v. Sims (1964) 377 U.S. 533, 554–555, 84 S.Ct. 1362, 1377, 12 L.Ed.2d 506: "[T]he Constitution of the United States protects the right of all qualified citizens to vote, *in state as well as in federal elections.* * * * The right to vote can neither be denied outright, * * * nor diluted by ballotbox stuffing * * *." (Italics added)

While it may be that the Constitution provides the right to vote only in federal elections and that the right to vote in purely state elections must derive from state constitutions or laws (*see,* Fortson v. Morris, 1966, 385 U.S. 231, 87 S.Ct. 446, 17 L.Ed.2d 330), it is clear that, where states provide for the election of officers, that right, as we have indicated, is protected against dilution involving "state action" under the Equal Protection Clause of the Fourteenth Amendment.

In keeping with this principle, federal courts have, since *Reynolds,* consistently acted to protect the right of suffrage in elections for state legislators and administrators. Avery v. Midland County (1968) 390 U.S. 474, 88 S.Ct.

17. *See, also,* South v. Peters (1950) 339 U.S. 276, 279, 70 S.Ct. 641, 643, 94 L.Ed. 834 (Douglas, J., dissenting) :

"There is more to the right to vote than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth. The right to vote includes the right to have ballot counted * * *. It also includes the right to have the vote counted at full value without dilution or discount."

1114, 20 L.Ed.2d 45; Hadley v. Junior College District (1970) 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45; Dundee v. Orleans Parish Board of Supervisors of Elec. (5th Cir. 1970) 434 F.2d 135. *Cf.,* Katzenbach v. Morgan (1966) 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828; Carrington v. Rash, *supra* (380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675). It has been held that any state statute limiting the right to vote in connection with the issuance of revenue bonds to support a municipal utility system to property owners is violative of the Equal Protection Clause of the Fourteenth Amendment. Cipriano v. City of Houma (1969) 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647. Similarly, a state limitation of suffrage in local school elections to property owners was invalidated for like reasons in Kramer v. Union School District (1969) 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583. Unreasonable residence requirements, imposed by the State, are likewise invalid, whether for state or federal elections. Hadnott v. Amos (Three-judge, ct. Ala.1970) 320 F.Supp. 107, aff'd. 401 U.S. 968, 91 S.Ct. 1189, 28 L.Ed.2d 318. It is, of course, true, as Justice Stewart observed in United States v. Guest, *supra* (383 U.S. at 755, 86 S. Ct. at 1176) that, "[i]t is a commonplace that rights under the Equal Protection Clause itself arise only where there has been involvement of the State or of one acting under the color of its authority." Accordingly, there must be some involvement in the election with which this action is concerned by one acting "under color" of state law. "Under color" of law has been construed as identical with and as representing state action. United States v. Price, *supra* (383 U.S. at 794, n. 7, 86 S.Ct. 1152). It may be represented by action taken directly under a state statute or by a state official acting "under color" of his office. United States v. Classic, *supra,* at 326 of 313 U.S., 61 S.Ct. 1031; Screws v. United States (1945) 325 U.S. 91, 107–113, 65 S.Ct. 1031, 89 L.Ed. 1495. It is, however, not necessary that the "involvement of the State need be either exclusive or direct"; it may be merely "peripheral". United States v. Guest, *supra* (383 U.S. at 755), 86 S.Ct. at 1177. Nor is it essential that the state official be a party defendant; it is sufficient if the proof involves "a charge of active connivance by agents of the State" in the wrongful acts done in furtherance of the conspiracy; that will meet the test of state action, as required under the rule enunciated in *Guest.* *See,* Note, The Supreme Court, 1965 Term, 80 Harv.L.Rev. 91, at 109 and 155, n. 5.

■ *Guest* and *Reynolds* read together, it seems to us, compel the conclusion that a conspiracy by the defendants with which the official election managers connived, in order to dilute through "ballot-box stuffing" the constitutionally protected right of suffrage, as is claimed here, is within the broad language of Section 241, and this is true whether the conspiracy is directed at an election for a state or a federal office, for which the election clerks and managers were essential cogs in the conspiracy. Without their active participation, the conspiracy was ineffective, both at the election itself and in the election contest. The depositing of false ballots in the ballot box required their connivance. The listing of the names of fictitious voters on the voting list had to be done by or with the cooperation of the election clerks. And, when the election contest developed, it was necessary for the election officials and the defendants to "stick[ing] together and tell[ing] the same story", as certain of the election officials testified without objection they were instructed to do by the defendants just before the election contest hearing.

■ Accordingly, the argument that federal jurisdiction ended under Section 241 with the certification of the federal election results and that, necessarily, evidence of crimes committed thereafter was inadmissible in this prosecution, is meritless, for the federal government has power not only to punish conspiracies to poison federal elections, but has power also to punish conspiracies, involving state action at least, to dilute the ef-

fect of ballots cast for the candidate of one's choice in wholly state elections.

## IV.

■ The defendants also find constitutional fault in Government counsel's jury summation. They complain that the prosecutor, in beginning a review of the testimony of the defendants' witnesses, with the words, "[w]hat do the defendants say?" was guilty of an impermissible comment on the failure of the defendants to testify. Viewed in isolation, the statement might have been of doubtful propriety; but, taken in connection with the comments that followed, for which it was but a rhetorical introduction, it was plainly not violative of the defendants' rights.

■ The rule, as formulated in most federal circuits, for ascertaining when argument of Government counsel represents improper comment on a defendant's failure to testify, was well stated in United States ex rel. Leake v. Follette (2nd Cir. 1969) 418 F.2d 1266, 1269, cert. denied 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665: " 'Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?' " Applying this rule, we conclude that the statement of the prosecutor was not "manifestly intended" as "a comment on the failure of the accused to testify." It is true the defendants themselves had not testified. They had,

however, offered an extensive defense, directed at the credibility of the Government's witnesses. They had called over thirty witnesses in their defense and had consumed several trial days in presenting their evidence. The challenged language of the prosecutor, expressed in an interrogatory form, was, as we have said, no more than a rhetorical inquiry, directed to the defendants' theory of defense, expressed as a mere predicate for then reviewing in detail that theory and the evidence offered by the defendants in support. This construction of the prosecutor's language and his obvious purpose is clear from the statements that immediately followed the rhetorical inquiry. The prosecutor followed the inquiry with a review of the defendants' defense as developed in their proof. It was to this proof that his inquiry was directed, not to the failure of the defendants to testify.[18] Moreover, the comment of the prosecutor, of which the defendants complain, taken in its context, was not as suggestive as a charge that the defendant "has presented no defense in this case", United States v. Johnson (4th Cir. 1964) 337 F.2d 180, 203, cert. denied 385 U.S. 846, 87 S.Ct. 44, 17 L.Ed.2d 77, or an argument "that the evidence of the government is uncontradicted or unexplained", Carlisle v. United States (4th Cir. 1912) 194 F. 827, 830; Davis v. United States (4th Cir. 1960) 279 F.2d 127, cert. denied 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53. *See also*, United States v. Lipton (2nd Cir. 1972) 467 F.2d 1161, 1168. In

18. The record clearly shows the context in which the challenged statement was made. In the opening portion of the Government's closing argument, in reviewing the evidence, Assistant United States Attorney King stated as follows:

"What do the defendants say? You heard the testimony, thirty some witnesses the defendants called. Apparently they say Sloan and Elswick—

"MR. BECKETT: Your Honor, may we approach the bench?

"THE COURT: I will entertain it at the end of the argument.

"MR. KING:—Sloan and Elswick were behind it all to get Elwood Sloan elected constable. Apparently Mr. Hager, Okey Hager, was an innocent benefactor. He got elected because of it, but Elwood Sloan was the one that needed to get elected constable. Their witnesses had Elwood Sloan and Cecil Elswick out the night before the election offering I believe over $3,000 or more to different people, total to go along with them.

"What else do their witnesses say? Lindsey Workman said that they offered him $300. . . ."

no event could it be considered prejudicial to the defendants, when considered along with the clear-cut instruction of the District Court in his subsequent charge. *Cf.*, United States v. Briggs (2nd Cir. 1972) 457 F.2d 908, 911–912, cert. denied 409 U.S. 986, 93 S.Ct. 337, 34 L.Ed.2d 251.[19]

## V.

Finally, the defendants complain of the District Court's failure to dismiss because the verdict was not supported by substantial or credible evidence. This argument rests largely on the contention that the Government's witnesses in the main had given conflicting statements, either in affidavits or testimony at the election contest hearing. The credibility of witnesses is, however, a question for the jury. It was the position of the Government that the earlier testimony of the witnesses, whose evidence was assailed by the defendants, had been coerced or induced by false promises. The resolution of such an issue was properly for the jury, which concluded the issue contrary to the position of the defendants. The trial court, who had the opportunity of observing the witnesses, was not disposed to distrust that conclusion by the jury. We find no error in his denial of the motion.

Affirmed.

19. Seemingly recognizing the weakness of their position, the defendants have included in their brief certain affidavits to the effect that the District Attorney, when he expressed the question to which the defendants excepted, turned and gestured toward the defendants. Had this occurred, we would not regard it as significant. But we are disturbed that these affidavits were not a part of the record for appeal; they were merely inserted by counsel for the defendants without notice in their printed brief. *See,* Rule 10, F.R.A.P. Any reference to material not in the agreed record for appeal, much less its inclusion in a brief filed with the Court, is both improper and censurable. We have accordingly taken no notice of these affidavits.