25 F.3d 1041
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Dennis Edward FORT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio WILSON, a/k/a Hootch, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
George LILLY, III, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark Anthony WHITAKER, Defendant-Appellant.
 Nos. 93-5430, 93-5447, 93-5431, 93-5432.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 10, 1994.
Decided: May 24, 1994.
 
 Appeals from the United States District Court for the Eastern District of North Carolina, at Fayetteville. Malcolm J. Howard, District Judge. (CR-92-35-H)
 John W. Halstead, Jr., Elizabeth City, North Carolina; John R. Parker, Jr., Clinton, North Carolina; Joseph Michael McGuinness, Salem, Massachusetts; Robert Dale Jacobson, Lumberton, North Carolina, for Appellants.
 Robert Edward Skiver, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 J. Douglas McCullough, United States Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before PHILLIPS and HAMILTON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal arises from the convictions of the appellants on a number of drug related charges. The case involves a large cocaine ring in Fayetteville, North Carolina known as the "Powder Boys." The appellants were convicted of conspiracy to distribute cocaine, use of firearms during drug trafficking crimes, aiding and abetting the same, and numerous substantive drug counts. Defendant Fort was convicted of money laundering and defendant Whitaker was also convicted of being a felon in possession of a firearm. At trial all defendants were found guilty on all counts in which they were charged and each was given a substantial sentence. On appeal the defendants assert the following claims of error:
 
 
 2
 1. That the evidence was insufficient to convict them of any count.
 
 
 3
 2. That the evidence was insufficient to convict on the charge that they possessed or used a firearm during the commission of a drug related crime.
 
 
 4
 3. That the evidence against defendant Lilly was insufficient to establish that he conspired to distribute cocaine or that he used or carried a firearm during a drug trafficking crime.
 
 
 5
 4. That the trial court erred in refusing to grant a mistrial to defendant Lilly because of the prosecutor's comment that Lilly could take the stand and explain what had happened.
 
 
 6
 5. That the trial court admitted various testimony in evidence at the trial which was unduly prejudicial and deprived the defendants of a fair trial.
 
 
 7
 6. That the trial court erred in sentencing defendant Lilly on several grounds.
 
 
 8
 7. That the trial court erred in determining the amount of narcotics reasonably foreseeable to the defendants Wilson and Lilly.
 
 
 9
 8. That the trial court erred in enhancing defendant Wilson's guideline range for obstruction of justice.
 
 
 10
 9. That the trial court erred when it found that defendant Wilson was an organizer or leader and then increased his offense level by four.
 
 
 11
 10. That the trial court erred in sentencing defendant Fort because of the court's determination of the amount of drugs attributable to him.
 
 
 12
 We find no merit to any of these claims, and we affirm.
 
 I.
 
 13
 This was a lengthy trial in which the government put up 33 witnesses, including a number of cooperating co-conspirators, investigators, and experts. There were 200 exhibits introduced into evidence. The prosecution's evidence was sufficient to prove the existence of the "Powder Boys" conspiracy and that it made retail sales of cocaine from January 1990 through May 1992 in the Fayetteville, North Carolina area. The leaders of this conspiracy were Dennis Edward Fort and Antonio Wilson. In their operation they employed a number of workers/salesmen who sold cocaine at five different locations located in the Fayetteville area: the Mini Ranch, Duke Street, Arran Circle, Turnpike Road and Pearce Street. Appellants George Lilly, III and Mark Anthony Whitaker were active workers/salesmen for the "Powder Boys."
 
 
 14
 Among the other workers/salesmen were William Mitchell, Timothy Jones, Tony Davis, Marcus Boyd, Timothy Roberts, Richard McEachern and Kevin McGhee. Each of these individuals became cooperating witnesses and testified that they had worked as salesmen for the conspiracy. They testified that they paid to the conspiracy $500 for a pack of cocaine containing 25 to 27 quarters. They sold these quarters for $25 each. The quarters contained a quarter gram of cocaine, the standard user dose, and the worker would normally have five to seven quarters available for his personal use or for his sale for his own account after he had sold 20 quarters to cover the cost of the entire pack.
 
 
 15
 These witnesses testified that Fort was the leader of the enterprise and was assisted by Wilson, and that these two controlled the delivery of the cocaine packs and received payments from the workers. These leaders also selected and dismissed salesmen and directed them to trade cocaine for firearms when possible.
 
 
 16
 Appellant Fort's sister testified that she assisted him in money laundering through J & D Construction Company, and she also testified about her brother's cocaine distribution. There was plenty of testimony as to the possession of firearms by the defendants, and searches of the various locations produced large amounts of currency, a number of firearms, jewelry, plastic baggies, scales and other implements used in the drug trade.
 
 
 17
 The government's evidence was overwhelming and sufficient to prove each essential element of every crime. The evidence against the defendants was aided by the testimony of defendant Dennis Fort, who took the stand in his own defense and admitted almost every act of which he was accused. He testified that he was a member of the "Powder Boys," that he sold cocaine, that he bought cocaine wholesale, and that he developed numerous cocaine sources and made substantial profits from the sale of cocaine. He testified that he had a system for the distribution of drugs and the payment of commission to salesmen, that he operated out of Turnpike Road and Pearce Street and that the cocaine was packaged at Morgan Street. He also stated that he received $500 per pack of cocaine supplied to his salesmen, that he shared cocaine supplies with defendant Wilson and that his sister, who testified for the government, had been truthful in her testimony as to his drug activities. Appellant Fort did try to minimize his role and the involvement of his codefendants.
 
 II.
 
 18
 During trial, defendant Lilly, through his counsel, attempted to prove that he had been threatened and was in fear of his safety, and this was the reason that he possessed certain firearms. On certain occasions, his attorney attempted to elicit testimony that Lilly feared for his safety while cross-examining government witnesses. One of these episodes produced an exchange between the attorneys which Lilly now contends violated his Fifth Amendment protection against self-incrimination. While cross-examining a cooperating coconspirator, Lilly's counsel attempted to elicit testimony that Lilly was in fear of one Chris Milton. The government objected on the grounds of relevancy, and Lilly's counsel stated, in the presence of the jury:
 
 
 19
 Your Honor, the government's already put in the gun they said was in the possession of my client, if my client was in fear for his safety and he possessed that gun, it's relevant as to whether there was a purpose other than for which they charged him.
 
 
 20
 To this the prosecutor responded: "I reckon Mr. Lilly can take the stand and tell us about it, if he wants to, Judge."
 
 
 21
 Lilly's counsel moved for a mistrial, which the judge denied and stated: "Overruled. I will instruct the jury on the matters of law. I have already instructed them that whether or not a defendant takes the stand is not to be considered and I will instruct them further on that."
 
 
 22
 We have visited this question of whether a prosecutor's indirect remark constitutes an improper comment on a defendant's failure to testify. See United States v. Whitehead, 618 F.2d 523 (4th Cir.1980); United States v. Anderson, 481 F.2d 685, 701 (4th Cir.1973), aff'd, 417 U.S. 211 (1974). These opinions have created the following test: "Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Whitehead, 618 F.2d at 527 (quoting Anderson ); Anderson, 481 F.2d at 701 (quoting United States ex rel Leake v. Follette, 418 F.2d 1266, 1269 (2d Cir.1969), cert. denied, 397 U.S. 1050 (1970)). We do not believe that the jury interpreted this remark as a statement that the defendant's failure to testify was due to a fear of incrimination. The comment was made during presentation of the government's case and before the jury knew whether Lilly would testify. The court had already instructed the jury that whether or not a defendant took the stand was not to be considered by the jury, and the court instructed the jury further on this issue in the jury charge. The statement was made only once and was not alluded to in the government's jury argument. We find no abuse of discretion by the court in failing to direct a mistrial on these facts.
 
 III.
 
 23
 There is no merit to appellants' claims of abuse of discretion in the admission of evidence by the trial judge. Defendants assert that the testimony that defendant Lilly's handgun was loaded with hollowpoint ammunition, which was designed to inflict severe injury to humans, and the testimony that one of the seized shotguns was stolen, were unfairly prejudicial and violated Federal Rule of Evidence 403 because "the probative value of this testimony was substantially outweighed by the danger of unfair prejudice."
 
 
 24
 All evidence introduced by the prosecution is intended to, and would be irrelevant if it did not, prejudice a defendant. It is only when such evidence is unduly prejudicial, such as when it is intended to inflame the passion or prejudice of the jury, that the trial court must conclude that its probative value is outweighed by the danger of unfair prejudice. Evidence concerning the nature of the handgun ammunition and the stolen shotgun were relevant to the issues framed by the indictment and were not unfairly prejudicial.
 
 
 25
 The prosecution had to prove beyond a reasonable doubt that the defendants possessed firearms and used them in connection with their drug trafficking and not for some innocent purpose, such as, target practice, bird hunting, clay pigeons, etc. Hollow-point ammunition is not used for target shooting or hunting. It is designed, manufactured and used to produce the greatest damage to the human victim. See United States v. Bayko, 774 F.2d 516, 521 (1st Cir.1985) ("the possession of a firearm partially loaded with bullets[hollow-nosed] designed to maim or kill by one with the defendant's background is by itself 'clear and convincing' evidence of dangerousness.").
 
 
 26
 Firearms are a tool of the illegal drug trade. These weapons are possessed not for sport, but are used to protect the drug dealers, their illegal drugs, and their ill-gained currency from other criminals and law enforcement officers. The record is filled with testimony about defendants' desire to acquire firearms and instructing their salesmen to trade drugs for firearms when possible. When a person loads a revolver with hollow-point ammunition, he may expect this fact to be used against him, if he possesses or uses the weapon for some illegal purpose. If the stolen shotgun had been loaded with buckshot rather than birdshot, this would have been admissible because buckshot is more effective against humans than birdshot.
 
 
 27
 There was no error in admitting the testimony that the shotgun had been stolen. The evidence established that the gun had been stolen and used for protection of the drug operation. As such it was relevant and not unfairly prejudicial.
 
 
 28
 The appellants also contend that certain exhibits involving the drugs were inadmissible because of the failure to prove a valid chain of custody. Because they do not clearly state at what point the chain of custody was broken, we find no merit to this claim.
 
 IV.
 
 29
 Defendant Lilly attacks his sentence claiming that he was a minor participant in the conspiracy, that he accepted responsibility and should have been credited therefor, and that the drug quantity attributed to him was too great. These claims are frivolous.
 
 
 30
 Lilly was a seller of cocaine on a regular basis as a part of a large cocaine conspiracy. A drug seller in a drug conspiracy does not occupy a "minor" role entitling him to a decrease in offense level. See United States v. Brooks, 957 F.2d 1138, 1149 (4th Cir.), cert. denied, 112 S.Ct. 3051 (1992). We find no error in the trial judge's refusal to grant him a reduction for acceptance of responsibility. The court based its decision, in part, on Lilly's refusal to admit his use of a firearm in relation to a drug trafficking crime and he refused to accept responsibility for the quantity of drugs passing through the conspiracy during his participation. Conviction by a jury does not in and of itself preclude a reduction of sentence for acceptance of responsibility, but such reduction is not intended to apply to a defendant who puts the government to the burden of proving his guilt at trial. U.S.S.G. Sec. 3E1.1, Comment 2.
 
 
 31
 As to the amount of cocaine, the trial judge based his findings on the extensive trial record and concluded that the 16 kilograms estimated by the probation officer was conservative. The determination of the quantity of drugs handled by a conspiracy is factual and we do not find that the district judge was clearly erroneous in the facts he found as to any of the defendants. Appellant Lilly argues that he was not allowed to call a probation officer as a witness at sentencing on the issue of drug weight. He wanted to question this witness about the reliability of an unsworn statement in the presentence report. We find no error because the judge made quite clear that his findings as to drug weights were based upon the evidence presented at trial and not upon the presentence report or any statements appearing therein.
 
 V.
 
 32
 Defendant Wilson claims error by the trial court in enhancing his sentence for obstruction of justice, but the record clearly shows that Wilson directly threatened a government witness and an attorney for a cooperating co-conspirator. Threatening or intimidating a witness is the type of conduct to which the enhancement of sentence provided by the guidelines applies. U.S.S.G. Sec. 3C1.1.
 
 
 33
 We have considered the other exceptions and find no merit in any of them.
 
 AFFIRMED