UNITED STATES of America, Appellee,

v.

James PERCY, Appellant.

No. 84–5189.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1985.

Decided June 27, 1985.

Alan B. Plevy, Fairfax, Va., for appellant.

Lawrence J. Leiser, Asst. U.S. Atty. (Lawrence J. Leiser, Asst. U.S. Atty., on brief), for appellee.

Before MURNAGHAN and SNEEDEN, Circuit Judges, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.

SNEEDEN, Circuit Judge:

James Percy appeals his conviction, following a jury trial in the United States District Court for the Eastern District of Virginia, for participating in a conspiracy to distribute cocaine. Percy alleges several errors on the part of the district court below. We find no error and accordingly affirm his conviction.

### I.

On May 1, 1984, Percy was convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846; distribution of cocaine in violation of 21 U.S.C. § 841(a)(1); and travel in interstate commerce to promote, manage, or facilitate the distribution of cocaine in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2. In late 1982 and early 1983, Percy and others engaged in a conspiracy to obtain cocaine in Florida and to transport it to and distribute it in the Washington, D.C. area. The Florida source for the cocaine was a Vincent De-Morzo, whom Percy had met in the summer of 1982 through a mutual friend, Paul Francois Pratt. Pratt, who had previously purchased cocaine from Percy, recruited Percy to distribute cocaine for De-Morzo in the Washington area. In November of 1982, Savino Recine also became a participant in the conspiracy and was to obtain cocaine for distribution from Percy. In mid-November, De-Morzo introduced Recine to Percy and told Recine that Percy could be trusted because he and Percy had been in business together a long time. On several occasions after that, Recine obtained cocaine from Percy at the latter's apartment.

The conspiracy began to unravel in early 1983 when Recine was arrested in his attempt to sell cocaine to an undercover agent for the Drug Enforcement Agency. Through Recine's cooperation, the other coconspirators were eventually apprehended. Percy was arrested on January 27, 1983, as he arrived at his residence in Northern Virginia, having driven there from Miami, Florida. His car was impounded and subsequently found to contain a .38–caliber gun and approximately one-half kilogram of cocaine having a street value of over $100,000.

The procedural history of this case is a rather tortured one since the case was scheduled for trial no less than five times. On February 11, 1983, Percy and four others were indicted by a grand jury on fourteen counts relating to their conspiracy. Percy's trial was set for April 7, 1983. On April 6, 1983, Percy was hospitalized for a heart problem; and the trial was rescheduled for May 5, 1983. On May 4, Percy attempted suicide by taking an overdose of medication. The trial was again continued—this time until June 1, 1983. On May 18, 1983, Percy filed a motion, pursuant to 18 U.S.C. § 4244, for a determination of his mental competency to stand trial. A competency hearing was held on May 25. Percy was found to be incompetent to stand trial at that time and was sent to the Federal Correctional Institute at Butner, North

Carolina. The trial date was continued and later set for September 28, 1983. On September 23, Percy filed another motion for a competency hearing. At a hearing held on September 29, Percy was again found to be incompetent to stand trial and was returned to Butner. On March 2, 1984, the district court granted Percy's motion to be released on bail and determined that Percy was finally competent to stand trial. A trial date of April 30, 1984, was set. On April 25, Percy again filed a motion for a competency hearing and a continuance of the trial. At a hearing on April 26, the district court found Percy to be competent to stand trial and denied his motion for another examination regarding his competency. The court also denied Percy's motion for a continuance. Trial began on April 30, 1984, and ended the following day with Percy's conviction on all three counts for which he was tried.

## II.

Percy first contends that the district court erred in denying his motion for a psychiatric examination, pursuant to 18 U.S.C. § 4244, to determine his mental competency to stand trial.[1] Percy apparently argues that he was denied his due process right to a fair trial.

After two earlier hearings in which Percy was determined to be incompetent, Judge Bryan found on March 2, 1984, that Percy was competent to stand trial based on a January 1984 report by a team of psychiatrists at Butner. When Percy again requested a competency examination just five days prior to his trial date, Judge Bryan held a competency hearing on April 26 at which Percy's psychiatrist, Dr. William Dodson, testified. Judge Bryan again found Percy competent to stand trial based on the report of the psychiatrists at Butner, Dr. Johnson and Dr. Samples, and on the testimony of Dr. Dodson that Percy's condition had not changed much within the last year. Judge Bryan made the following ruling from the bench on the motion for further evaluation:

I have before me the report of Dr. Samples and the report of Dr. Johnson on January 31 on the basis of which I found some time ago—I don't know the exact date—but I found the defendant competent to stand trial. The testimony of the witness today is that he is basically the same.... I find that he is competent to stand trial. I do not doubt the sincerity

---

**1.** Section 4244 was amended in 1984 by P.L. 98–473 and now deals with hospitalization of a convicted person suffering from a mental disease or defect. Prior to amendment, section 4244 read as follows:

> § 4244. Mental incompetency after arrest and before trial
> Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury.

of Dr. Dodson. I know the seriousness with which he holds the opinion that he does. But I think the lack of change now and what was present in January of this year renders him still competent to stand trial. It may be difficult for him to go to trial, but I do not think that he cannot assist in his defense, and I think that he understands the nature and seriousness of the charges. He may not relate them to himself as a psychiatric matter, and I am not in a position to say he is a malingerer, but the eve-of-trial ailments that seem to increase in severity and become quite severe or at least they are brought to the attention of the Court on the very eve of trial as to their severity gives the Court some skepticism.... But I think Mr. Percy is competent to stand trial, and the motion for any further evaluation, in my opinion, should be denied. I do not think we will know any more about Mr. Percy after a further evaluation than we know about him right now. The motion for a 4244 evaluation or for a continuance, or for both, is denied.

Transcript of April 26, 1984, hearing at 32–33.

■ Percy argues that it was clear error for the district court to rely on a psychiatric report prepared several months prior to trial because it did not take into account a present sense of Percy's competency. The testimony of Percy's own psychiatrist, however, helped to provide that answer for the district court; and the court specifically noted Dr. Dodson's comments regarding the lack of significant change over the past year. In fact, Dr. Dodson testified that Percy had actually improved during that year. Transcript of April 26, 1984, hearing at 16–17. We do not find that the district court erred in continuing to rely on the report prepared by psychiatrists at Butner.

■ Section 4244, prior to amendment in 1984, provided that a defendant whose mental competency is in question shall be examined by at least one qualified psychiatrist. 18 U.S.C. § 4244. Percy has certainly been examined by that number and more. The comment of the district court was quite apt when it stated that it would not "know any more about Mr. Percy after a further evaluation than we knew about him right now." Transcript of April 26, 1984, hearing at 33. Section 4244 further provided that a competency hearing should be held *if* the reporting psychiatrist indicated the defendant was insane or mentally incompetent. Although the report on which the court was relying indicated that Percy was competent to stand trial, the court nevertheless held a competency hearing and made a finding as to mental competency pursuant to that section. We find that the district court followed the strictures of § 4244 and did not err in denying Percy's motion for further psychiatric examination.

■ The standard to be used in deciding whether a defendant is competent to stand trial is whether he " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975) (quoting *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)).[2] Al-

---

2. At the April 26 hearing, defense counsel argued vigorously that Percy was unable to assist in his defense. It is interesting that, at a May 6, 1983, hearing on the Government's motion to revoke Percy's bond in light of his suicide attempt, defense counsel stated the following:

I would like to just emphasize again that Mr. Percy has a record in this case of appearing for all the hearings in this case, of being in constant touch with counsel, of fully cooperating with counsel. I know that Mr. Percy was in my office most of the day preparing the case with me the day before this happened [suicide attempt]. And, you know, he was depressed when he came into my office. I felt that when he had left the office, that he was in good spirits, that things were going well,. [sic] That was my mistake. I again do not purport to be a psychiatrist. At any rate, we spent probably five or six hours, the day before this occurred, working on the case, going through exhibits and things of that nature.

Transcript of May 6, 1983, hearing at 9–10.

though Percy does not specifically raise the issue of whether the district court's determination of Percy's competency was supported by the record, we have undertaken to review the record *sua sponte* and have determined that the finding was adequately supported. Judge Bryan had before him the report of the psychiatrists at Butner determining Percy to be competent. He also had the report of Percy's psychiatrist, Dr. Dodson, and had heard Dr. Dodson's testimony that, while he felt Percy was incompetent to stand trial, Percy's condition had much improved over the past year. Judge Bryan further had the opportunity to observe and question Percy himself. Although Percy, at the request of his own counsel, did not appear at the April 26 competency hearing, he did appear before Judge Bryan at the hearing on March 2, 1984, and was questioned by the judge. Judge Bryan also observed Percy throughout the trial. Apparently nothing occurred which caused him to doubt Percy's continued competency to stand trial. Thus, finding no error below, we conclude that Percy was not denied his due process right to a fair trial.

### III.

Percy next argues that the district court erred in admitting evidence of prior bad acts alleged to have been committed by Percy. Percy also challenges the admission of evidence regarding certain acts committed prior to the date on which the conspiracy alleged in the indictment began—November 11, 1982. Unfortunately, Percy does not specify the evidentiary items to which he objects, nor does he explain how he was prejudiced by their admission at trial.

The Government, however, did introduce—over the objection of counsel—evidence of prior conduct and crimes through the testimony of Paul Francois Pratt, one of Percy's alleged co-conspirators. Pratt

testified, for example, that Percy had sold cocaine to him on approximately five to ten occasions between mid–1981 and mid–1982. Trial Transcript at 92–93. Pratt also testified that in the summer of 1982, De-Morzo, Pratt, and Percy met in Coral Gables, Florida, and agreed to an arrangement for distributing cocaine in the Washington area. Trial Transcript at 97. Pratt further stated that Percy had received cocaine from him or De-Morzo on two occasions between July and September 1982. Trial Transcript at 97–99. Percy contends that the need for and probative value of this evidence was outweighed by its prejudicial effect.

■ As stated by Judge Murnaghan in *United States v. Davis*, 657 F.2d 637 (4th Cir.1981), "[t]he general rule is that the prosecution may not introduce evidence of extrinsic offenses to demonstrate the defendant's propensity to commit unlawful acts or to prove that the defendant committed the crime with which he is presently charged." *Id.* at 639. Rule 404(b) of the Federal Rules of Evidence, however, admits evidence of other crimes, wrongs, or acts "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." [3] Rule 404(b) has been characterized as an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition. *United States v. Masters*, 622 F.2d 83, 85 (4th Cir.1980). Furthermore, the list of circumstances, set forth in the Rule, under which such evidence may be admitted is illustrative, not exclusionary. *Id.* at 86.

■ Evidence of Percy's arrangement with De-Morzo and Pratt in the summer of 1982 to distribute cocaine is relevant to show the preparation, planning, and background of the conspiracy actually charged in the indictment. It is significant that the

---

**3.** Rule 404(b), in its entirety, reads as follows:
　(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

co-conspirators were the same, the drug involved was the same, and the role the defendant was supposed to play was the same. This prior conduct was highly similar to that for which Percy was indicted and was also quite close in time—within five to six months—to the conspiracy alleged in the indictment. Thus, its probative value is clear. *See United States v. Beahm*, 664 F.2d 414, 417 (4th Cir.1981) (where defendant was charged with taking indecent liberties with children, court properly admitted testimony of two male witnesses that defendant had made sexual advances to them within three years prior to offenses charged). This evidence is also relevant to show Percy's knowledge, intent, and the absence of accident or mistake.

Pratt's testimony regarding his prior purchases of cocaine from Percy was also admissible under Rule 404(b). Such evidence is obviously relevant to show that Percy's acts were "not inadvertent, accidental, unintentional or without guilty knowledge." *See United States v. Samuel*, 431 F.2d 610, 612 (4th Cir.1970) (where defendant was on trial for receipt, concealment, and transportation of drug which had been unlawfully imported, testimony of undercover agent that he had previously purchased narcotics from the defendant was properly admitted).

It should be noted, however, that evidence which fits within one or more of the exceptions outlined in Rule 404(b) may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice ...". Fed.R.Evid. 403. We find that the evidence admitted in this case was clearly probative and was not of such nature as to create a "genuine risk that the emotions of the jury will be excited to irrational behavior ..." *United States v. Masters*, 622 F.2d 83, 87 (4th Cir.1980) *quoting* Troutman, *Logical or Legal Relevancy—A Conflict in Theory*, 5 Vand.L. Rev. 385, 410 (1951–52). Thus, we determine that the district court did not abuse its discretion in admitting the evidence described above.

■ Percy also argues that the district court erred in admitting evidence of prior conduct or crimes in light of what he asserts was a "pretrial order" issued by Judge Lewis that such evidence would be excluded at trial. We do not find this argument persuasive. The conversation between the district court and Percy's counsel at a motions hearing did not rise to the level of a pretrial order, nor did the district court indicate that evidence of prior conduct or crimes properly admissible under Rule 404(b) would be excluded. The conversation occurred in the context of defense counsel's request for a bill of particulars, and the district court simply stated that the government would be limited at trial to the overt acts charged in the indictment. Transcript of March 11, 1983, hearing at 9. Furthermore, at trial, Judge Bryan specifically instructed the jury that the testimony of prior conduct or crimes had been admitted for the limited purpose of proving knowledge and intent, etc., and that the jury could only convict the defendant of the specific allegations contained in the indictment. Trial Transcript at 490–91. We find no error on the part of the district court.

## IV.

■ Percy next argues that government counsel improperly commented on Percy's failure to testify at trial, apparently contending that this violated his Fifth Amendment rights. During closing argument, government counsel commented that the testimony establishing the existence of a conspiracy, and Percy's participation in it, remained "unrefuted and unrebutted." Trial Transcript at 433–A. Defense counsel objected to the comment during a conversation at the bench. While noting that it was an improper argument, Judge Bryan stated that he did not believe that, in the context in which it was made, the statement constituted a comment on Percy's failure to testify. Trial Transcript at 442. We agree. Based on our review of the record, we do not believe that "the language used [was] manifestly intended to be, or was ... of such character that the

jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Anderson,* 481 F.2d 685, 701 (4th Cir.1973), *aff'd on other grounds,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974) *quoting United States ex rel. Leak v. Follette,* 418 F.2d 1266, 1269 (2nd Cir.1969), *cert. denied,* 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665. *See also Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (state prosecutor's repeated references, in his closing remarks to the state's evidence being "unrefuted" and "unrebutted" did not violate defendant's Fifth and Fourteenth Amendment rights since defense counsel had focused attention on her silence by stating that she would testify).

### V.

Percy's final argument is that he was not provided with effective assistance of counsel at trial. We cannot decide this issue at the present time because we do not have before us an adequate record to do so. Defense counsel should be given an opportunity to explain the reasons for his actions or inactions challenged by Percy. *United States v. Lurz,* 666 F.2d 69, 78 (4th Cir. 1981), *cert. denied sub nom. Magill v. United States,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *United States v. Raimondo,* 721 F.2d 476, 477 (4th Cir. 1983), *cert. denied sub nom. Bello v. United States,* — U.S. —, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984). Percy may later raise this issue pursuant to 28 U.S.C. § 2255. The conviction of the appellant is

AFFIRMED.