842 F.2d 1293
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carole Rae OLSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carole Rae OLSON, Defendant-Appellant.
 Nos. 87-5045, 87-6138.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 4, 1987.
Decided March 7, 1988.
 
 William M. Kunstler (Ronald L. Kuby, on brief), for appellant;
 Thomas Oliver Mucklow, Assistant United States Attorney (William A. Kolibash, United States Attorney; Martin P. Sheehan, Assistant United States Attorney; Beth Heir Lurz, Assistant United States Attorney, on brief), for appellee.
 Before JAMES DICKSON PHILLIPS, SPROUSE and ERVIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Carole Rae Olson appeals from her conviction after a jury trial on six counts of racketeering, conspiracy, cocaine importation and possession charges.[1] She contends (1) that the trial court erred in admitting evidence of her prior "bad acts"; (2) that the evidence was insufficient to support her possession conviction; and, (3) that the jury was entitled to review transcripts of trial testimony. Olson also appeals from the district court's denial of her post-judgment motion for a new trial based on the government's failure to disclose allegedly material, exculpatory evidence. We find no reversible error, and affirm the judgment of conviction.
 
 I.
 A.
 
 2
 On August 7, 1985, a grand jury in the Northern District of West Virginia issued a multi-count indictment charging Olson and ten others with offenses arising out of their participation between 1978 and 1984 in a conspiracy to import and distribute cocaine and other illegal narcotics. The indictment resulted from a lengthy investigation of a criminal organization operated principally by Anthony Donald Spadafore.[2] Pursuant to a plea bargain, Spadafore provided the government with information concerning the members and activities of his organization. He also testified for the government at Olson's trial.
 
 
 3
 The charges against Olson centered on her role as one of Spadafore's cocaine suppliers. The predicate offenses for the racketeering charges and the overt acts in furtherance of the conspiracy counts consisted of two transactions in 1981 and 1982 in which she sold large quantities of the drug to Spadafore and his associates. The 1981 transaction involved a complex arrangement wherein Spadafore's agents purchased three kilograms of cocaine from Olson in Peru and transported it to the United States via Stella Maris Island in the Bahamas. The evidence established that in November 1981, Olson received payment for the cocaine from one of Spadafore's associates in Peru and provided the drug to another associate who smuggled it out of the country.[3]
 
 
 4
 The second overt act supporting the RICO and conspiracy counts involved the 1982 sale of one kilogram of cocaine and its subsequent transport from Florida to the Northern District of West Virginia.[4] The government presented evidence that on April 22, 1982, Spadafore and an associate, Walter Traugh, met Olson near Vero Beach, Florida for the purpose of purchasing cocaine from her. After checking into the hotel where Olson was staying, Spadafore accompanied her to Fort Lauderdale, where according to Spadafore, Olson introduced him to one Ronald Borden. Spadafore testified that Olson and Borden then left together to purchase one kilogram of cocaine, and that he had given Olson a sum of money for "part" of the kilogram. The two returned after a number of hours, and Olson and Spadafore drove back to the Vero Beach hotel. At the hotel, Olson produced one kilogram of cocaine, which Spadafore hid in Traugh's suitcase. The three then boarded a commercial airline flight to Pittsburgh, Pennsylvania, checking the cocaine-laden suitcase with their other luggage.
 
 
 5
 On arrival in Pittsburgh, the three bacame suspicious when the suitcase appeared with one latch open on a separate baggage carousel from that which carried their other luggage. They drove to West Virginia without attempting to claim it.[5] Thereafter, an airline employee noticed the unattended bag and called Traugh at his Fairmont, West Virginia residence.[6] At Traugh's request, the airline shipped the case immediately to Fairmont via a local air carrier.
 
 
 6
 The next day, however, Olson reappeared at the Pittsburgh airport and attempted to claim the bag. She explained to airline employees that when she arrived in Pittsburgh she gave a claim check for the bag to a porter, but that the porter failed to deliver it to her car. The employees then asked her whether she owned the bag and whether she could describe it for them. Olson answered equivocally. At first she stated the bag was hers, but then responded that it belonged to her travelling companions. She refused to identify the bag or its contents, but indicated that she would know it when she saw it. The employees searched for the case, but were unable to find it since it had already been shipped to West Virginia.
 
 
 7
 Olson's demeanor aroused the employees' suspicion, and after she left the airport they requested airline personnel in West Virginia to open the bag to verify whether its contents coincided with Traugh's name on the outside label. The subsequent inspection revealed both the cocaine and an interior bag, which contained various articles belonging to Traugh. The Drug Enforcement Administration then attempted a controlled delivery of the suitcase to Traugh's residence, but Traugh refused to accept it, saying it was not his. Neither Traugh nor Olson made further attempts to retrieve the suitcase.
 
 B.
 
 8
 At trial the government presented substantial evidence of Olson's participation in the suitcase scheme, the 1981 Peruvian cocaine transaction, as well as other evidence connecting her to uncharged drug-trafficking incidents. In defense, Olson claimed that she had no knowledge of Spadafore's criminal activities and that she did not participate in them. In opening argument, her counsel informed the jury, "[Olson] didn't know that she was Anthony Donald Spadafore's primary transporter, smuggler and mule for cocaine." According to Olson, her involvement with Spadafore was limited to legitimate business activities, and only post-indictment hindsight made her aware that Spadafore had been "attempt[ing] to lure her into this vast, ongoing criminal enterprise." In her later cross-examination of government witnesses, Olson attempted to show that her conduct was consistent with that of a person who was unaware of ongoing criminal activity.
 
 
 9
 Over Olson's objection, the government's first witness, unindicted coconspirator James Gregory Smith, contradicted her lack of knowledge contentions by testifying to numerous drug importation and sale activities in which she participated during the early 1980s. Smith testified that Olson had smuggled cocaine from Peru many times and that he had participated in a number of the ventures.[7] Smith further stated that he helped Olson distribute the drug in the United States in California, Washington, and "up and down the coast, here and there," and that he smuggled the proceeds from the sales back to Olson in Peru. Although Smith testified in explicit detail about the methods Olson used in her smuggling activities, he was unable to specify exact locations, dates, and times of the sale transactions he witnessed.
 
 
 10
 Olson asserted that Smith's testimony was designed to convince the jury of her criminal character, and that it was inadmissible under Federal Rules of Evidence 404(b) and 403.[8] The court, however, accepted the government's position that the evidence fell within the general scope of the charged cocaine conspiracy and that it rebutted Olson's lack of knowledge allegations. The trial court also overruled Olson's relevancy objections to Smith's testimony.
 
 II.
 
 11
 In her first contention on appeal, Olson asserts that the court abused its discretion in admitting Smith's testimony of her uncharged bad acts. She maintains that the evidence encouraged the jury to convict her solely upon her criminal disposition, and that if offered to prove knowledge or absence of mistake, the government had a duty to wait until the rebuttal stage of the case to present it. Olson also argues that the trial court failed to weigh the probative value of the evidence against its prejudicial effect and that the result of this balancing required its exclusion. We disagree.
 
 
 12
 In this circuit, reliable evidence of a defendant's uncharged crimes is admissible under Rule 404(b) if it is relevant and necessary to prove that the offenses charged were not committed inadvertently, accidentally, unintentionally, or without guilty knowledge. United States v. Percy, 765 F.2d 1199, 1203-04 (4th Cir.1985). We must defer to the trial court's decision to admit such evidence unless the decision is "arbitrary or [an] irrational exercise of discretion." Garraghty v. Jordan, 830 F.2d 1295, 1298 (4th Cir.1987). Here, Olson's principal defense was that she was the innocent victim of Spadafore's criminal machinations. She proffered this defense in her jury argument and in her cross-examination of government witnesses. Under these circumstances, the evidence of Olson's uncharged drug-trafficking activities, which occurred within the same time frame as the charged offenses, was relevant to show guilty knowledge. See Percy, 765 F.2d at 1203-04 (prior cocaine conspiracy with similar conduct and same participants probative of absence of mistake).
 
 
 13
 Olson argues, however, that the two other elements of the Rule 404(b) calculus--reliability and necessity--were not satisfied. She maintains that Smith's testimony was not reliable because it was uncorroborated and because he could not specify names, dates, and locations pertaining to each of the incidents to which he testified. She further asserts that the evidence was "unnecessary" because it was presented at the beginning of the government's case, rather than at the rebuttal stage. We again disagree.
 
 
 14
 The government granted Smith immunity for his testimony on the condition that he testify truthfully. Olson brought out this fact on cross-examination. The record also reveals that Smith was specific as to the details of Olson's criminal acts that were most probative of guilty knowledge. While it is true that Smith could not recall various aspects of the domestic cocaine sales transactions, he testified in detail about the cocaine smuggling ventures he participated in with Olson. These illegal excursions occurred close in time to the offenses charged in the indictment and they did not differ drastically from the transaction involving Stella Maris Island--an event on which Olson concedes the sufficiency of the evidence.[9] These factors in our view adequately support the trial court's exercise of discretion in finding Smith's testimony sufficiently reliable. The fact that it was uncorroborated was an additional factor that the trial court could have considered, but it is not as Olson argues a predicate for automatically rejecting the testimony.[10]
 
 
 15
 Rule 404(b) also answers Olson's contention that the government untimely presented Smith's testimony at the inception of its case. The rule contains no sequential requirement for the introduction of evidence of other crimes. United States v. Hadaway, 681 F.2d 214, 218-19 (4th Cir.1982). It is, of course, important from a relevancy standpoint to refrain from presenting Rule 404(b) evidence until a need for it has arisen, id., but in assessing need a trial court may consider the issues the defendant has raised in an opening statement. See United States v. Rhodes, 779 F.2d 1019, 1031 n. 4 (4th Cir.1985), cert. denied, 476 U.S. 1182 (1986). Here, Olson opened her defense by denying knowledge of the charged cocaine schemes and she persisted in her lack of knowledge defense on cross-examination of government witnesses after Smith testified. Even if her opening statement did not provide an immediate basis for invoking Rule 404(b), cf. id., it was not reversible error to allow Smith's testimony in light of the later-presented evidence. United States v. Basic Construction Co., 711 F.2d 571, 574 (4th Cir.), cert. denied, 464 U.S. 956 (1983).[11]
 
 
 16
 Finally, Olson asks us to hold that the district court failed to take into account the potential for unfair prejudice resulting from Smith's testimony as required by Fed.R.Evid. 403. We are persuaded, however, that the probative value of Smith's testimony was not substantially outweighed by its prejudicial effect.[12]
 
 III.
 
 17
 Olson next contends that the evidence was insufficient to support her conviction for possession of cocaine with intent to distribute. 21 U.S.C. Sec. 841(a). She argues that the government failed to establish that she possessed the drug, actually or constructively, within the Northern District of West Virginia. The jury, however, returned a guilty verdict under appropriate instructions from the court.[13] We find subtantial evidence to support its decision.
 
 
 18
 The element of "possession" under 21 U.S.C. Sec. 841(a) required the government to establish that Olson had "appreciable ability to guide the destiny" of the cocaine in Traugh's suitcase. United States v. Samad, 754 F.2d 1091, 1096 (4th Cir.1984), quoting United States v. Staten, 581 F.2d 878, 883 (D.C.Cir.1978). Olson's ability, moreover, need not have been exclusive; joint or shared possession satisfies the statute. United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir.), cert. denied, 447 U.S. 925 (1980).
 
 
 19
 The record contains overwhelming evidence that West Virginia was the intended destination for the cocaine, and the jury could reasonably infer that Olson played a substantial role in guiding its transport there.[14] Spadafore testified that he paid Olson for only "part" of the kilogram, and that he and Olson made a joint decision to leave the suitcase in Pittsburgh. From this, the jury could find that Olson retained an ownership interest in the drug. In light of the evidence of Olson's subsequent action at the Pittsburgh airport, the jury had a substantial basis for concluding that Olson retained constructive possession of the cocaine in West Virginia.[15]
 
 IV.
 
 20
 Olson finally contends that the district court abused its discretion in denying her motion for a new trial based on the government's nondisclosure of allegedly material, exculpatory evidence. As we have stated, Spadafore testified at trial that Olson introduced him to Ronald Borden in Florida at the time of the cocaine purchase, and he indicated that Borden played a part in securing the drug. Following trial, Olson learned that the government had interviewed Borden and that Borden disclaimed any knowledge of Olson or Spadafore. Ruling on Olson's post-trial motion, the district court found that the government failed to reveal the exculpatory contents of the Borden interview, but that a new trial was not warranted because disclosure would not have changed the outcome of the proceeding.
 
 
 21
 We agree with the trial court's conclusion. Under United States v. Bagley, 473 U.S. 667, 682 (1985), nondisclosure of exculpatory evidence does not constitute reversible error unless there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Here, Olson thoroughly impeached Spadafore in her cross-examination. She presented evidence of Spadafore's involvement in a wide range of criminal activity and she apprised the jury that Spadafore was testifying pursuant to a plea agreement. The disclosure of Borden's interview would have provided only cumulative impeachment. In addition, there is no question that Spadafore and Olson obtained cocaine in Florida and transported it North. The original source of the cocaine was at best collateral to the issues the jury was charged to decide. Under these circumstances, we conclude that the trial court correctly denied Olson's post-trial motion.
 
 
 22
 In view of the above, the judgment of conviction is affirmed.[16]
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Olson was convicted of: (1) conspiracy to violate the Racketeer Influenced And Corrupt Organizations Act, 18 U.S.C. Sec. 1962(d) (RICO); (2) violating RICO, id. Sec. 1962(c); (3) conspiracy to import and distribute cocaine, 21 U.S.C. Sec. 846; (4) interstate travel in aid of racketeering, 18 U.S.C. Sec. 952(a)(3); (5) cocaine importation, 21 U.S.C. Sec. 952(a); and, (6) possession with intent to distribute cocaine, id. Sec. 841(a)(1)
 
 
 [2]
 We have previously reviewed the convictions of other members of the Spadafore organization who were indicted with Olson but tried separately. See United States v. Esposito, No. 86-5097 (4th Cir. April 13, 1987) (unpublished); see also United States v. Traugh, No. 83-5146 (4th Cir. June 14, 1984) (unpublished) (earlier indictment)
 
 
 [3]
 Numerous government witnesses testified about this transaction, which also served as the basis for the substantive cocaine importation charge, and Olson does not contest the sufficiency of the evidence supporting her conviction on it
 
 
 [4]
 This event established the basis for Olson's conviction for possession of cocaine with intent to distribute, and it served as the second predicate offense for the racketeering charges
 
 
 [5]
 Spadafore testified: "It looked like it was disturbed. Carole and I decided not to bother the thing, you know."
 
 
 [6]
 Traugh's name and address were written on an identification label affixed to the suitcase
 
 
 [7]
 Smith recounted that Olson had smuggled cocaine on her person, in the lining of her purse, and in the cavity of an oscilloscope that Smith brought through United States Customs
 
 
 [8]
 Rule 404(b) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 Fed.R.Evid. 404(b).
 Rule 403 provides:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 Fed.R.Evid. 403.
 
 
 [9]
 Like the Stella Maris incident, the other smuggling episodes Smith recounted involved Olson securing cocaine in Peru and transporting it by plane to the United States. While the methods of concealment differed among the transactions, the overall scheme was the same. A review of Smith's testimony also indicates that he played a larger role in the smuggling ventures than in domestic sales. It is therefore not surprising that he was able to recall more details about the former
 
 
 [10]
 Rule 404(b) does not preclude an accomplice from giving testimony of the defendant's past crimes solely because the testimony is uncorroborated. United States v. Harbour, 809 F.2d 384, 388 (7th Cir.1987); United States v. Parnell, 581 F.2d 1374, 1383-84 (10th Cir.1978), cert. denied, 439 U.S. 1076 (1978); United States v. Trevino, 565 F.2d 1317, 1319 (5th Cir.), cert. denied, 435 U.S. 971 (1978); see also United States v. Manbeck, 744 F.2d 360, 392 (4th Cir.1984), cert. denied, 469 U.S. 1217 (1985); United States v. Clark, 541 F.2d 1016, 1017 (4th Cir.1976). The trial court here correctly instructed the jury to consider accomplice testimony "with caution" and to weigh it "with great care."
 
 
 [11]
 We reject Olson's Rule 404(b) contention concerning the testimony of government witness Marcus Maxwell. Maxwell testified about Olson's attempt to recoup money lost in the Stella Maris transaction through a marijuana smuggling venture. This was part of the "complete story" surrounding the charged Stella Maris incident and was not Rule 404(b) evidence. See United States v. Wooten, 688 F.2d 941, 948 (4th Cir.1982)
 
 
 [12]
 The court instructed the jury that "the defendant is not on trial for any act or conduct or offense not alleged in the indictment," and with respect to the racketeering charges, the court charged that, "[i]n considering racketeering acts which the defendant may have agreed to commit in furtherance of the alleged enterprise, you are limited to those acts charged in the indictment against the defendant." These instructions appropriately focused the jury's attention away from the Rule 404(b) evidence
 
 
 [13]
 The trial court instructed the jury that it may convict Olson on the possession charge if it found beyond a reasonable doubt that Olson actually possessed the cocaine or had power to exercise dominion and control over it within the Northern District. Olson does not challenge the court's instruction. She contests the sufficiency of the evidence supporting the jury's verdict. The standard of sufficiency, of course, is that "there must be 'substantial evidence, taking the view most favorable to the Government, to support [the jury verdict].' " United States v. Samad, 754 F.2d 1091, 1096 (4th Cir.1984), quoting Glasser v. United States, 315 U.S. 60, 80 (1942)
 
 
 [14]
 It is undisputed that the cocaine found its way to West Virginia and the government discovered its presence after it had arrived
 
 
 [15]
 Olson also contends that collateral and judicial estoppel precluded the government from claiming that Olson possessed the cocaine in West Virginia. She bases her collateral estoppel argument on the fact that the government secured a ruling on her pretrial suppression motion that she had abandoned the suitcase in Pittsburgh and therefore had no standing to assert a fourth amendment violation in the subsequent discovery of its contents. She claims judicial estoppel because a government attorney in the earlier prosecuted case against Traugh orally argued that Traugh alone had constructive possession of the case
 We agree with the government that the lack of standing to assert fourth amendment rights does not preclude conviction for a possession offense, nor does "abandonment" for fourth amendment purposes automatically preclude constructive possession of the property abandoned. United States v. Salvucci, 448 U.S. 83, 88-89 (1980) ("a prosecutor may, with legal consistency and legitimacy, assert that a defendant charged with possession of a seized item did not have a privacy interest violated in the course of the search and seizure"). We also decline to impose judicial estoppel because the law clearly provides that constructive possession may be shared. The government thus had no motive or interest in pursuing an inconsistent theory, and there has been no showing that the government misled or otherwise impugned the integrity of the courts or judicial process.
 
 
 [16]
 Olson failed to object to the trial court's refusal of the jury's request to review transcripts during its deliberations. Finding that the court's decision did not implicate substantial rights belonging to the defendant, we decline to review her contentions of error raised for the first time on appeal