953 F.2d 639
 34 Fed. R. Evid. Serv. 1238
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frank BARBARA, Jr., Defendant-Appellant.
 No. 90-5537.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 1, 1991.
Decided Jan. 31, 1992.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CR-90-185-2)
 Argued: Warren Gary Kohlman, Kohlman & Rochon, Washington, D.C., for appellant, Quincy Leon Ollison, Assistant United States Attorney, Alexandria, Va., for appellee.
 On Brief: Kenneth E. Melson, United States Attorney, Alexandria, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Defendant, Frank Barbara, Jr., appeals his conviction for conspiracy to possess with intent to distribute 50 grams or more of crack cocaine and the distribution of 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1). He alleges that the district court abused its discretion by allowing the government to reopen its case to present evidence of prior bad acts and that the evidence itself, which included testimony that Barbara was involved in crack cocaine trafficking during a period which preceded the conspiracy at issue, was improperly admitted in violation of Federal Rule of Evidence 404(b). Because we conclude that the trial court did not abuse its discretion on either count, we affirm.
 
 
 2
 * Beginning in January 1990, members of the Northern Virginia Crack Task Force of the Drug Enforcement Agency (DEA) initiated an investigation of a suspected conspiracy to distribute crack cocaine involving Jeffrey Dion Cox, Laurence Darrell Johnson, and Dwayne Lee. The DEA agents utilized an undercover Fairfax County police officer, William C. Woolf, known to the alleged co-conspirators as "Nick," to penetrate the conspiracy.
 
 
 3
 During February and March 1990, "Nick" purchased several quantities of crack cocaine from Cox and Lee. On March 27, 1990, he called Cox over a private paging system requesting to purchase two ounces of crack. Cox in turn paged a supplier named "Solo" and arranged a deal by which "Solo" would consign or "front" the crack and receive $2200 from the proceeds of the subsequent sale to "Nick." After Cox sold the crack to "Nick" for $2700, he met with "Solo" at the Rivertown Mall and paid him the agreed upon $2200.
 
 
 4
 On April 17, 1990, "Nick" again paged Cox and stated that he wanted to buy three ounces of crack cocaine. Cox, in turn, paged "Solo" to arrange the sale. That night, Cox and Johnson met with "Solo" to discuss the deal, and, in keeping with their established procedure, "Solo" "fronted" the crack and demanded $2700 from the sale proceeds. When Cox and Johnson sold the crack to "Nick" at the Springfield Mall in Fairfax County, Virginia, both men were arrested.
 
 
 5
 Immediately following his arrest, Cox agreed to cooperate with the government, identifying "Solo" as his source. The police instructed Cox to communicate with "Solo" and arrange for another sale. Cox complied and reached "Solo" using their paging system. Due to the limited facilities at the Franconia Police Station where they were located, the conversation was not tape recorded and the police were only able to hear Cox's side of the dialogue. During the conversation, Cox told "Solo" that "the deal [with "Nick"] went smoothly" and that they should meet in the "usual" location. To avoid suspicion, Cox did not attempt to arrange another sale during this call. Instead, he ended the conversation and waited a few minutes before redialing and requesting an additional one and a half ounces of crack. Although Cox told the police after he hung up this second call that the sale could take place later that morning, he later admitted that he lied to preserve his opportunity to cooperate with the government and stated that "Solo" had in fact told him that the drugs would not be available for several days.
 
 
 6
 Cox was then taken by the police to the Toddle House Restaurant, located in Fairfax County, Virginia, to complete the deal already arranged with "Solo." At approximately 1:30 a.m., after receiving instructions from the police, Cox paged "Solo" and explained that he was waiting at the Toddle House Restaurant with "Solo's" money. Cox also stated that he did not know where Johnson was and would therefore need a ride. At approximately 2:00 a.m., when "Solo" arrived at the restaurant and joined Cox at a table, Cox placed $2700, which was partially wrapped in a napkin, on the table and slid it over toward "Solo." "Solo" briefly glanced at the money, took it, and minutes later left the restaurant with Cox. They were arrested shortly after entering "Solo's" car. The police found the $2700 strewn across the front of the vehicle. "Solo" turned out to be the defendant, Frank Barbara.
 
 
 7
 On May 24, 1990, the Grand Jury returned a seven count indictment against Barbara and Cox, charging both men with conspiracy to possess with intent to distribute crack cocaine for the period of January 1990 up to and including April 17, 1990, and with the distribution of crack cocaine in violation of 21 U.S.C. § 846(a)(1). A separate indictment was filed against Johnson. During the trial, both Cox and Johnson testified against Barbara as cooperating government witnesses.
 
 
 8
 At the commencement of trial, Barbara's counsel filed a motion in limine under Federal Rule of Evidence 404(b) to prevent the government from introducing evidence of Barbara's prior bad acts relating to drug distribution. The district court deferred ruling on the issue. Instead, it instructed the government to approach the bench for a ruling when it was ready to call witnesses on the issue.
 
 
 9
 After presenting its case-in-chief, the government rested without having introduced its Rule 404(b) evidence because the court had never ruled on the in limine motion. Defense counsel approached the bench, made a motion for acquittal and, if the motion were to be denied, requested a recess to confer with Barbara. At the same time, the government asked the court to make its ruling with respect to the motion in limine. The court denied Barbara's motion for judgment of acquittal and, after a brief recess, the defense announced that it would also rest. When the court then addressed the outstanding motion in limine, the government requested permission to introduce the testimony of two witnesses. The government represented that the first witness would testify that he "set the defendant up in the business" of selling crack cocaine in Maryland and that the second witness would testify that he sold drugs on behalf of Barbara during a period of time which preceded the conspiracy charged in the indictment.
 
 
 10
 The district court ruled that the evidence was admissible and permitted the government to reopen its case to present the evidence. The court found the proposed testimony "relevant" and "probative on the issue of proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." The court gave a standard cautionary instruction to the jury both before the witnesses testified and again in its instructions following closing arguments.
 
 
 11
 The jury found Barbara guilty of conspiracy to possess with intent to distribute 50 grams or more of crack cocaine for the period charged in the indictment and the distribution of 50 grams or more of "crack" cocaine on April 17, 1990.
 
 II
 
 12
 Barbara's first claim of error is that the district court improperly permitted the government to reopen its case to introduce prior bad acts evidence pursuant to Federal Rule of Evidence 404(b). As to the question of whether it was proper to reopen, we have consistently held that "control over the order of proof is within the trial court's discretion." United States v. Carter, 569 F.2d 801, 803 (4th Cir.1977) (upholding decision of district court to allow government to reopen its case), cert. denied, 435 U.S. 973 (1978). See also United States v. Paz, 927 F.2d 176, 179 (4th Cir.1991) ("The reopening of a criminal case after the close of evidence is within the discretion of the trial judge."). Our review of the record does not disclose an abuse of that discretion in this case.
 
 
 13
 It is clear that prior to trial Barbara was aware of the government's intention to introduce evidence of prior offenses under Rule 404(b). Indeed, Barbara's motion in limine was a pretrial motion. When considering the motion, the court stated that it would defer its decision on the admissibility of testimony concerning Barbara's alleged drug activities which preceded the conspiracy at issue until the government was ready to present that evidence at trial. Although the issue did not come up again until after the government rested, it is apparent that Barbara took no step and made no decision in reliance on the government's failure to raise the issue earlier. Immediately, after the government rested and at the first opportunity, the government reminded the court it needed to rule on the in limine motion. It is apparent that the precise order of events at that time was of no consequence to any party because the court invited proposals as to the convenient order of events: "Prior bad acts, if he [Barbara] rests, do you [government] want to put them in[?] If not, you want to put them in on rebuttal if I allow them in? If I don't allow them in, it's academic. Do you want to suggest a procedure?" When thereafter Barbara decided to rest without putting on evidence, the court decided to admit the prior bad acts evidence. Only then did Barbara's counsel note, "I'm not trying to be overly technical, but the government did rest." The court then reiterated that the government never relinquished its position on presenting the evidence, stating, "I know we had the motion in limine. I would allow them to reopen. We had the motion in limine. I told him I'd wait and see what it was. I understand. But he certainly indicated he wanted to use it." The court determined that, in these circumstances, it would permit the government to present the evidence in light of the court's delayed ruling on the in limine motion.
 
 
 14
 Based on the facts before us, we cannot say that the district court acted arbitrarily or abused its discretion in allowing the government to reopen its case.
 
 III
 
 15
 Barbara also challenges the admission of evidence concerning certain drug offenses allegedly committed by him prior to the conspiracy charged in the indictment. Specifically, he contends that the prior bad acts evidence was not relevant to any disputed issue at trial, that it was used by the government in closing argument to suggest that Barbara had a propensity to commit crime, and that the trial judge erred in refusing to conduct a Rule 403 balancing test with respect to the evidence.
 
 
 16
 Federal Rule of Evidence 404(b) generally prohibits the introduction into evidence of extrinsic offenses to demonstrate the defendant's propensity to commit unlawful acts or to prove that the defendant has a character flaw and is therefore more likely to have committed the crime with which he is presently charged. United States v. Davis, 657 F.2d 637, 639 (4th Cir.1981); see also United States v. Johnson, 634 F.2d 735, 737 (4th Cir.1980), cert. denied, 451 U.S. 907 (1981). Evidence of other crimes, wrongs, or acts may, however, be admissible if it is (1) relevant to an issue other than the character, (2) reliable, and (3) necessary. United States v. Greenwood, 796 F.2d 49, 53 (4th Cir.1986). If the prior bad acts are offered to prove an issue other than the defendant's criminal disposition, Rule 404(b) adopts an inclusive approach. United States v. Watford, 894 F.2d 665, 671 (4th Cir.1990). The Rule expressly allows the admission of evidence that is relevant "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). This list, however, is merely illustrative and "[t]he circumstances under which such evidence may be found relevant and admissible under the Rule have been described as 'infinite.' " United States v. Masters, 622 F.2d 83, 86 (4th Cir.1980).
 
 
 17
 When the government was permitted to reopen its case, it called Melvin Johnson (to be distinguished from Laurence Johnson, a coconspirator) to the stand. Melvin Johnson testified that in 1988 he arranged for Barbara to move from New York to Maryland to distribute crack cocaine. According to Johnson, between the Spring of 1988 and January of 1989 both he and Barbara "fronted" crack cocaine to various individuals and occasionally collected their shares of the sale proceeds at the Riverside Mall in Maryland. Johnson also testified that Barbara used the alias "Solo" and communicated with his dealers through a paging system. At trial, Johnson identified Cox as one of the individuals who sold cocaine for Barbara.
 
 
 18
 The government also presented the testimony of Anthony Barnes. Barnes identified Barbara as "Solo" and claimed that he, Barnes, sold crack cocaine for "Solo" from March through October of 1988. Barnes testified that he communicated with "Solo" by means of a paging system and that he occasionally met "Solo" at the Rivertown Mall to deliver the promised share of the sale proceeds.
 
 
 19
 Evidence of Barbara's crack cocaine dealings with Melvin Johnson and Barnes during 1988 and 1989 was particularly relevant to show that Barbara's acts on April 17, 1990, were not inadvertent, unintentional, or without guilty knowledge, as he contended. See United States v. Samuel, 431 F.2d 610, 612 (4th Cir.1970) (Where defendant was charged with the receipt, concealment, and transportation of illegal drugs, testimony of undercover agent that he had previously purchased narcotics from defendant was properly admitted to prove motive and to show that his acts were not "inadvertent, accidental, unintentional or without guilty knowledge."). The only direct evidence linking Barbara to the conspiracy charged in the indictment was the testimony of Cox and Laurence Johnson, the other alleged coconspirators, and evidence that Barbara accepted $2700 from Cox at the Toddle House Restaurant several hours after Cox was arrested for selling crack cocaine to "Nick," the undercover police officer. Throughout the trial, Barbara emphasized the government's lack of direct proof implicating him in the conspiracy and suggested that he may have met Cox at the Toddle House Restaurant for an entirely innocent reason. In opening argument, defense counsel stated that:
 
 
 20
 the police had never themselves seen Frank Barbara in all of these deals, that they had even followed Cox and Johnson on occasion and [had] never seen Barbara, and that all that happened on April 18th is that Barbara came into a fast food restaurant, that he and Cox left and got into a car and that when the police [got] to the car, they [found] the money that they had given Cox strewn all over the car.... There's no conversation that they overheard, there's no tape recordings, there's no anything.
 
 
 21
 The evidence from the two witnesses who testified that Barbara was in the business of selling drugs and that he regularly "fronted" crack cocaine to dealers and later collected a portion of the proceeds from the completed sale was therefore particularly relevant to prove that when Barbara met Cox at the Toddle House Restaurant and received $2700, it was to collect his share of the proceeds from the sale of crack to "Nick." Moreover, Melvin Johnson identified Cox as one of the men who sold drugs for Barbara. Because the drug activities testified to by Johnson and Barnes were sufficiently related to the conspiracy now at issue and demonstrate that Barbara had the means to regularly distribute crack cocaine to other dealers for resale, we agree that they were probative of material issues in the case.
 
 
 22
 The testimony of Melvin Johnson and Barnes was also relevant because it corroborated the critical testimony of Cox and Laurence Johnson. Throughout trial, defense counsel vigorously attacked the credibility of Cox and Laurence Johnson and challenged the veracity of their testimony. Both Melvin Johnson and Barnes confirmed that Barbara was known in the drug world as "Solo," that he used a paging system to communicate with his dealers, that he often "fronted" the cocaine to his dealers, and that he occasionally collected a portion of the sale proceeds at the Rivertown Mall in Maryland.
 
 
 23
 Although we find that this evidence was relevant to an issue other than character, it could still be excludable if its probative value was substantially outweighed by the danger of unfair prejudice, see United States v. Percy, 765 F.2d 1199, 1204 (4th Cir.1985). The admissibility determination, however, lies within the sound discretion of the trial court. See Greenwood, 796 F.2d at 53. Barbara alleges that the district court erred because it failed to balance the probative value of the evidence against the danger of unfair prejudice produced by its admission. While an explicit determination of probative value is desirable and may aid the appellate court in reviewing the record, we have held that it is not necessary. See United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988). The district court carefully considered the government's motion to introduce the testimony of Melvin Johnson and Barnes and determined that it was relevant to numerous issues other than character. The court also gave the jury several limiting instructions with respect to this evidence before Johnson and Barnes testified and again following closing arguments. See Masters, 622 F.2d at 87 (noting that undue prejudice "can be generally obviated by a cautionary or limiting instruction"). For these reasons, we believe that the district court's relevancy determination, along with its cautionary instructions to the jury, were sufficient to insure that the evidence was properly admitted.
 
 
 24
 Finally, Barbara contends that during closing argument the government improperly suggested that the prior bad acts evidence was relevant to show that Barbara had a propensity to commit the crime charged. In its summation, the government explained to the jury that the testimony of Johnson and Barnes was submitted "for the purpose of showing that this defendant had knowledge of involvement in crack cocaine trafficking." This statement, when taken in the proper context, does not require a reversal. Earlier in its closing argument, when the government provided an overview of the evidence presented at trial, it told the jury that it should consider the testimony of Cox, Johnson, Sergeant George, and Investigator ("Nick") Woolf when determining whether Barbara was a member of the conspiracy. The government's subsequent statement referring to the testimony of Johnson and Barnes served only to clarify the limited purpose for which that evidence was admitted.
 
 
 25
 Finding no reversible error in the conduct of Barbara's trial, we affirm his conviction.
 
 
 26
 AFFIRMED.