**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-4744**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RICKY CHASE HOBBS,

Defendant - Appellant.

---

**No. 05-4745**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JEREMY KRATZER,

Defendant - Appellant.

---

Appeals from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Fox, Senior District Judge. (CR-04-11)

---

Submitted: July 6, 2006          Decided: July 19, 2006

---

Before WIDENER, WILLIAMS, and MOTZ, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Nora H. Hargrove, Wilmington, North Carolina, for Appellant Ricky
Chase Hobbs; Geoffrey W. Hosford, HOSFORD & HOSFORD, P.L.L.C.,
Wilmington, North Carolina, for Appellant Jeremy Kratzer.  Wan J.
Kim, Assistant Attorney General, Jessica Dunsay Silver, Angela M.
Miller, UNITED STATES DEPARTMENT OF JUSTICE, Civil Rights Division,
Appellate Section, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

A jury convicted Ricky Chase Hobbs and Jeremy Kratzer of conspiring to drive an African-American family to leave town in violation of 18 U.S.C. § 241 (2000). Hobbs and Kratzer appeal, arguing that the district court made several reversible errors. After carefully reviewing the record in this case, we find no reversible error. Accordingly, we affirm.

The African-American Edwards family moved to Nine Mile -- a previously predominantly Caucasian neighborhood in North Carolina -- in 1999. Shortly after the family's arrival, Hobbs and Kratzer participated in conversations with a group of young people discussing strategies for intimidating the Edwards family so that they would leave Nine Mile. Hobbs, Kratzer, and many of their companions would often shout racial epithets and throw trash while driving past the Edwards house.

In addition, Hobbs and Kratzer talked with their companions about hanging a noose on the Edwards's doorknob, putting a dead raccoon or possum on their doorstep, and placing a burning cross in their yard. Kratzer and Hobbs even discussed the best way to construct a burning cross: nailing together two-by-fours and dousing them with gasoline. In the weeks following these conversations, a burning cross appeared in the Edwards's backyard, and members of the conspiracy hung a noose from the Edwards's doorknob, and threw a dead raccoon in the Edwards's yard.

3

Frightened by these events, the Edwards family eventually moved away from Nine Mile.

At trial, co-conspirators Joshua Hancock and Philip Foy both testified that, in their minds, they had reached an understanding with both Hobbs and Kratzer to intimidate the Edwards family. The jury convicted Hobbs and Kratzer of violating 18 U.S.C. § 241, and the court sentenced each to 21 months' imprisonment.

Hobbs and Kratzer argue that the evidence presented at trial was insufficient to support their convictions. Viewing the evidence in the light most favorable to the Government, we must affirm the convictions if "any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." United States v. Uzenski, 434 F.3d 690, 700 (4th Cir. 2006). Here, the government presented ample evidence -- both direct and circumstantial -- that Hobbs and Kratzer were members of a conspiracy to intimidate the Edwards family into leaving Nine Mile. Accordingly, the district court did not err when it denied the defendants' motion for a directed verdict of acquittal.

Next, Hobbs and Kratzer assert that they are entitled to a new trial because the prosecutor improperly commented on their failure to testify. During closing argument, counsel for the Government stated, "The defense hasn't called a single witness to refute the government witnesses' testimony about these conversations." We have recognized on numerous occasions that a prosecutor's mention

4

of a defendant's failure to refute evidence does not violate a defendant's right against self-incrimination. See, e.g., United States v. Francis, 82 F.3d 77, 78 (4th Cir. 1996); United States v. Percy, 765 F.2d 1199, 1204 (4th Cir. 1985). In our view, the prosecutor's comment in this case clearly was not "manifestly intended to be [] or . . . of such a character that the jury would naturally and necessarily take it to be a comment of the failure of the accused to testify." United States v. Anderson, 481 F.2d 685, 701 (4th Cir. 1973). Thus, we reject this argument.

Hobbs and Kratzer additionally contend that they are entitled to a new trial because of a prosecution comment suggesting that the defendants had admitted guilt. During closing argument, the prosecutor said, "You heard another contention from counsel, something along the lines of other people might be just as guilty as my client." Hobbs and Kratzer objected, pointing out that they had not admitted any guilt. The district court sustained the objection, and counsel for the Government then said, "let me correct the misimpression, if I left you with one. I'm not suggesting that counsel has argued that their clients aren't guilty. . . . They've made very forceful arguments in favor of their client." The Government concedes that the prosecutor mischaracterized defense counsel's argument. However, we cannot find that this minor error "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

5

<u>United States v. Mitchell</u>, 1 F.3d 235, 240 (4th Cir. 1993). As a result, Hobbs and Kratzer do not qualify for a new trial.

Hobbs and Kratzer also challenge the district court's decision sustaining the Government's <u>Batson</u> challenge to the defense's use of a peremptory challenge during jury selection. <u>Batson</u> analysis proceeds in three steps: 1) the party raising the challenge must make a prima facie showing of racial discrimination in the jury selection process, then 2) the burden shifts to the challenged party to articulate a race-neutral reason for the strike, and 3) the court must determine whether the challenging party has carried its burden of showing that unlawful discrimination played a role in the decision to strike a potential juror. <u>See</u> <u>Batson v. Kentucky</u>, 476 U.S. 79, 96-98 (1986); <u>see also</u> <u>Georgia v. McCollum</u>, 505 U.S. 42, 59 (1992) (holding that <u>Batson</u> applies to a defendant's decision to strike potential jurors).

Here, the Government raised a <u>Batson</u> challenge after defense counsel struck a potential alternate juror; the Government noted that the defense had "struck every single black member of the pool." The court replied, "I know that," and then inquired into defense counsel's rationale for striking four jurors during the course of jury selection and, finding the defense explanation unsatisfactory, ultimately sustained the Government's challenge. Hobbs and Kratzer maintain that, because the record does not indicate the race of prospective jurors, the Government could not

6

have made a prima facie case that the defense used its peremptory challenges in a racially discriminatory manner.

In the Batson context, we give "great deference" to a district court's findings "regarding whether a prima facie showing has been made." United States v. Lane, 866 F.2d 103, 105 (4th Cir. 1989). In this case, the district court found that the Government had made out a prima facie case that the defense was using its peremptory challenges in a racially discriminatory fashion; the court further found that the defense was unable to offer a satisfactory "race-neutral explanation" for its decision to strike the potential jurors in question. Hernandez v. New York, 500 U.S. 352, 359 (1992). When a district court has reached the second step in the Batson analysis -- requiring the challenged party to provide a race-neutral explanation -- "the preliminary issue of whether the defendant had made a prima facie showing becomes moot." Id.; see also Lane, 866 F.2d at 105 ("[T]his court will not address the question of whether the [challenging party] established a prima facie showing to satisfy Batson where the [challenged party] articulated reasons for his strikes."). Because the district court reached the second step of the Batson analysis, we need not decide whether the Government made out a prima facie case of discrimination.

Finally, Hobbs and Kratzer argue that the district court erred in allowing Joshua Hancock to testify that, in his mind, he had an

understanding with both Hobbs and Kratzer "that things should be done to try and scare the Edwards family." Hobbs and Kratzer assert that this testimony was a legal opinion bearing on the ultimate issue for the jury to decide. This argument has no merit. The Federal Rules of Evidence permit the admission of lay opinion testimony that is "rationally based on the perception of the witness," Fed. R. Evid. 701, even if it "embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). Here, Hancock's testimony described whether, in his mind, he had an understanding with Hobbs and Kratzer to intimidate the Edwards family. This testimony was highly relevant and was admissible under the federal rules. Thus, the district court did not abuse its discretion in admitting Hancock's testimony.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.
